[Civ. No. 3551. Second Appellate District, Division Two.—October 28, 1921.]

J. SHAFFER et al., Respondents, v. ED. ARNAELSTEEN, Appellant.

[1] MALICIOUS PROSECUTION — EMBEZZLEMENT — WANT OF PROBABLE CAUSE — EVIDENCE — VERDICT. — In this action for damages for malicious prosecution brought by a husband and wife against the owner of an apartment house who had caused the arrest and prosecution of the plaintiff wife on a charge of embezzlement growing out of the retention by said plaintiff of a small sum of money which had been paid to her by a tenant for the cleaning of an apartment, while she was employed as manager, the evidence was sufficient to warrant the jury in finding that there was no probable cause for the prosecution.

[2] ID.—APPROPRIATION OF MONEY UNDER CLAIM OF TITLE—EMBEZZLEMENT—WANT OF PROBABLE CAUSE TO PREFER CRIMINAL CHARGE.— Where a person appropriates money openly and avowedly, under a claim of title preferred in good faith, she is not guilty of embezzlement, even though her claim is untenable; and where the owner of the money believes, or has reasonable grounds to believe, that she appropriated the money under such conditions, he has no probable cause to prefer a charge of embezzlement against her and cause her arrest thereunder.

[3] ID.—WANT OF PROBABLE CAUSE—MALICE—PRESUMPTION—INFERENCE.—While there is no legal presumption of malice arising from the want of probable cause for a criminal prosecution, malice may be found as an inference of fact arising from the circumstances of the want of probable cause.

[4] ID.—HONEST BELIEF OF GUILT—ADVICE OF COUNSEL—INSTRUCTIONS —WANT OF PREJUDICE.—In this action for damages for malicious prosecution, considering the other instructions given by the court,

2. What constitutes embezzlement, note, 87 Am. St. Rep. 19.

3. Instruction in action for malicious prosecution that malice may be inferred from want of probable cause, note, L. R. A. 1918A, 872.

4. Advice of counsel as defense in action for malicious prosecution, notes, 1 Ann. Cas. 932; 11 Ann. Cas. 954; Ann. Cas. 1912D, 423.

the jury could not have been misled to the defendant's prejudice by an instruction in the conjunctive to the effect that if the person causing the prosecution of another honestly believes that the crime has been committed, and if, in addition to such honest belief in the guilt of the accused, he seeks the advice of counsel learned in the law, and, after a full and fair statement of the facts within his knowledge, is advised by such counsel that the facts constitute a crime, his good faith in prosecuting the alleged offender is warranted, such instruction having been directed to the special affirmative defense of advice of counsel.

[5] ID.—SUFFICIENCY OF STATEMENT TO COUNSEL—BELIEF OR KNOWLEDGE OF EXISTENCE OF OTHER FACTS.—In an action for damages for malicious prosecution, it is not error to instruct the jury that to support the defense of advice of counsel the defendant is required to show by a preponderance of the evidence that he made to counsel "a full, fair and true statement of all the material facts known to him, of which he had and knew the means of ascertaining," and that if he had reasonable grounds to believe that other facts existed which would tend to exonerate the accused from the charge of embezzlement, good faith required that he should make further inquiry with reference to those facts and communicate the information obtained to his counsel, or that he should inform counsel of his belief in their existence.

[6] ID.—REVIEW OF VERDICTS—EXCESSIVE DAMAGES—DUTY TO ORDER NEW TRIAL.—While there is no inflexible or definite rule by which courts can be governed in reviewing verdicts in actions for damages, the appellate court has the power, and it is its duty, to order a new trial where the justices are satisfied that the amount assessed against the defendant is excessive, unless the plaintiff shall file a *remittitur* of damages; and in this action for damages for malicious prosecution, in view of the circumstances surrounding the arrest and release of the plaintiff on bail and the small amount of actual damages suffered by her, the verdict of the jury, as reduced by the trial judge on motion for new trial, for six thousand dollars was outrageously excessive and grossly disproportionate to any injury that may have been received and to any punishment that properly could be inflicted upon defendant.

APPEAL from a judgment of the Superior Court of Los Angeles County. Leslie R. Hewitt, Judge. Affirmed conditionally.

The facts are stated in the opinion of the court.

---

6. Excessive or inadequate verdict in action for malicious prosecution, note, **Ann. Cas.** 1916C, 250.

Harry Lyons for Appellant.

George L. Sanders for Respondents.

FINLAYSON, P. J.—This action for malicious prosecution is founded upon the allegation in the complaint that defendant maliciously and without probable cause had the plaintiff, Mrs. Shaffer, arrested and prosecuted for the embezzlement of $2.50. Following her acquittal of the embezzlement charge, Mrs. Shaffer and her husband brought this action against defendant to recover damages for the alleged malicious prosecution. The jury gave plaintiffs a verdict for $10,000. Defendant moved for a new trial on the ground, among others, of excessive damages, appearing to have been given under the influence of passion and prejudice. The trial court ordered that unless plaintiffs remitted the sum of $4,000 within ten days, the motion would be granted. Plaintiffs filed the required remission and thereupon the motion for a new trial was denied. Defendant appeals from the judgment, and urges, as one of his grounds for a reversal, that the sum of $6,000, remaining after the remission of said $4,000, is excessive and so disproportionate to any damage sustained by plaintiffs as to make it manifest that a verdict for even that amount could have been induced only by prejudice and passion.

The charge of embezzlement upon which Mrs. Shaffer was prosecuted grew out of the following facts: Defendant, at the times herein mentioned, was the owner of the Louvre Apartments, in the city of Los Angeles. On June 7, 1919, he employed Mrs. Shaffer as manager. During the oral negotiations prior to the consummation of the contract of employment, and after defendant had offered Mrs. Shaffer a monthly salary of $100 and the further sum of $60 per month with which to pay the janitor service, and after she had told him that $60 a month would not suffice to pay a janitor, defendant, according to the testimony of Mrs. Shaffer and her husband, told Mrs. Shaffer, in substance, that she could collect and keep the moneys paid by the tenants for cleaning their apartments. Mrs. Shaffer's testimony upon the terms of this arrangement was substantially as follows: "I told Mr. Arnaelsteen that $60 would not be enough to

54 Cal. App.—46

pay a janitor, and that I didn't feel that I could work for less than $100 a month; and Mr. Arnaelsteen says, 'Well, I will tell you, I will make it a little bit better for you; you can collect for cleaning the apartments.' He said that if a tenant should come to rent an apartment for less than a month, that is, for one week or two weeks, we were to charge the tenant in advance for cleaning his apartment, and that that was to be added on to the rent.'' Defendant denied that he ever made any agreement whatever with Mrs. Shaffer authorizing her to collect and keep the ''cleaning money.'' In view of the fact that the jury returned a verdict for the plaintiffs, we must consider the case upon the assumption that an agreement was made substantially as testified to by the plaintiffs.

About June 8, 1919, Mrs. Shaffer entered upon the performance of her duties as manager of the apartment house, and remained until the 2d or 3d of July following, when she and her husband, owing to some misunderstanding or disagreement with the defendant, left the Louvre Apartments. On leaving defendant's employ, Mrs. Shaffer and her husband moved into the Hirsch Apartments, about three blocks from defendant's apartment house. Before leaving the Louvre Apartments, Mrs. Shaffer left with defendant her new address and telephone number.

On or about June 20, 1919, and while Mrs. Shaffer was managing the Louvre Apartments for defendant, a Mr. Davis and his wife rented apartment No. 315 for two weeks. Davis paid Mrs. Shaffer $14. She kept $2.50 as a cleaning charge, gave Davis a receipt for $14, and entered upon a book that she kept for defendant the item of $11.50, rent for the apartment. This particular apartment had previously been cleaned by Mrs. Shaffer with the aid of the janitor. With respect to this collection Mrs. Shaffer testified substantially as follows: ''Mrs. Davis made the business arrangements with me. She and her husband came in and asked for an apartment. I told them I had one. She says, 'Well, it is only wanted for two weeks.' I told her then that the price of the apartment with a garage would be $11.50, and I says, 'By staying only two weeks you pay in advance for the cleaning of your apartment'; and she said, 'That is perfectly satisfactory with me.' I receipted them for $14 which they paid me.''

On July 4, 1919, which was at least one day after Mrs. Shaffer had left defendant's employ and had severed her connection with his apartment house, Davis' tenancy expired. As Davis was leaving defendant told him that he still owed $2.50 for cleaning the apartment; Davis replied that he did not, and told defendant that he had a receipt to show for it. Shortly thereafter Davis produced the receipt for $14 which Mrs. Shaffer had given him, and turned it over to defendant. On July 8, 1919, defendant swore to a complaint in the police court charging Mrs. Shaffer with the embezzlement of $2.50. Before preferring the charge defendant laid the case before a deputy city prosecutor for the city of Los Angeles, but failed to tell that officer of his agreement with Mrs. Shaffer that she might collect and keep the "cleaning money." Indeed, as we already have stated, defendant at all times stoutly denied that he ever made any such agreement with Mrs. Shaffer. Upon the facts thus given to him, the deputy prosecutor advised defendant that the crime of embezzlement had been committed by Mrs. Shaffer, and thereupon defendant swore to the criminal complaint and set on foot the prosecution of Mrs. Shaffer for the alleged embezzlement. A warrant was issued, Mrs. Shaffer was arrested, and, on depositing bail money in the sum of $10, was later released, after having been in actual custody not more than four or five hours. A day or so after the arrest, a trial in the police court was had and Mrs. Shaffer was adjudged to be not guilty of the alleged embezzlement. Shortly thereafter she and her husband brought this action and obtained the judgment from which this appeal is prosecuted.

[1] It is claimed by appellant that the evidence is insufficient to sustain the verdict, the claim being that the evidence is insufficient to show either a want of probable cause or malice in the criminal prosecution of Mrs. Shaffer. There was sufficient evidence to warrant the jury in finding that there was not probable cause for the prosecution. From the evidence adduced by plaintiffs, the jury was justified in finding that defendant told Mrs Shaffer that she might collect and keep all moneys paid to her by tenants for cleaning apartments while she was defendant's manager; and also that defendant knew that Mrs. Shaffer was claiming the $2.50 under this agreement. Because Mrs. Shaffer

testified that the understanding was that she was to collect the cleaning money *in advance,* it is argued that the money was to be collected, not only in advance of the commencement of the tenancy, but also in advance of the cleaning for which the charge was made; and, further, that because this particular apartment that Mr. Davis rented had been cleaned by Mrs. Shaffer *before* Davis' tenancy commenced, she, therefore, was not entitled to retain the $2.50 which she had collected from Davis as "cleaning money." But Mr. Shaffer testified that defendant told himself and wife that the latter could collect the cleaning money from an incoming tenant for cleaning an apartment that had previously been vacated by its former tenant. His testimony on this phase of the case is as follows: "Q. Did Mr. Arnaelsteen tell you in that conversation that you should collect the cleaning money from the tenants coming in for the cleaning of apartments *that had just been vacated?* A. Yes, sir. . . . Q. What was your understanding? Did you understand that you were authorized to collect from a tenant coming in moneys for cleaning the apartment after the tenant that had just moved out? A. Tenants moving in we were to collect in advance. Q. For what? A. For two weeks; if they rented for two weeks we were to collect in advance. Q. What were you to collect in advance? A. The cleaning of the apartment. Q. When was the cleaning to be done? A. *Before the tenants moved in.*"

[2] Moreover, conceding that there was room for an honest difference of opinion between the parties as to the proper interpretation to be placed upon their agreement respecting the "cleaning money," still there is sufficient evidence to warrant the inference that the $2.50 which Mrs. Shaffer received from Mr. Davis was appropriated by her openly and avowedly, under a claim of title preferred in good faith. If she did so appropriate and claim the $2.50, she was not guilty of embezzlement, even if her claim was untenable. (Pen. Code, sec. 511.) If, therefore, defendant believed, or had reasonable grounds to believe, that Mrs. Shaffer had appropriated the money openly and avowedly, under a claim of title preferred in good faith, then he had no probable cause for the criminal prosecution which he caused to be launched against her. That he did believe that she had so appropriated the $2.50 under an honest claim

of title thereto is an inference that the jurors were warranted in drawing from all the evidence in the case. As we have stated, the evidence shows that defendant told Davis, as the latter was quitting the Louvre Apartments, that he, Davis, owed $2.50 for cleaning the apartment which he previously had rented; and that to this Davis replied that he did not owe the cleaning money, that he had a receipt to show for it—referring to the receipt for $14 which Mrs. Shaffer had given him when, as defendant's manager, she rented the apartment to him. Knowing that, under their agreement, Mrs. Shaffer was entitled to collect and keep moneys paid to her by tenants for cleaning their apartments, and learning from Mr. Davis that the latter had paid this particular sum of $2.50 to Mrs. Shaffer ·as such "cleaning money," and knowing, further, that, when Mrs. Shaffer and her husband left defendant's apartment house to move to another near by, they had left with him their address and telephone number, defendant, as an ordinarily cautious man, had reasonable ground to believe that Mrs. Shaffer was claiming the money in good faith under her contract with him, and that, when it was received by her, she had appropriated it as her own openly and avowedly. In short, the circumstances of this case are such that, notwithstanding defendant's positive and sworn assertion to the contrary, the jury may well have inferred that when he preferred the charge against Mrs. Shaffer he did not in good faith believe her guilty of embezzling the $2.50 which she had collected pursuant to her contract.

[3] There is sufficient evidence on the issue of malice. Undoubtedly it devolved upon plaintiffs to establish the fact that the prosecution was malicious as well as without probable cause. But from the want of probable cause the requisite malice could be inferred by the jury. The malice could not be found as a presumption of law from the fact that there was not probable cause for the prosecution, for there is no legal presumption of malice arising from the want of probable cause; but malice may be found as an inference of fact arising from the circumstances of the want of probable cause.

[4] It next is contended that the court committed error by giving an instruction whereby the jurors were told that if the person causing the prosecution of another honestly

believes that the crime has been committed, and if, in addition to such honest belief in the guilt of the accused, he seeks the advice of counsel learned in the law, and, after a full and fair statement of the facts within his knowledge, is advised by such counsel that the facts constitute a crime, "his good faith in prosecuting the alleged offender is warranted." Appellant's criticism of this instruction is grounded upon the assumption that the jury might have inferred from the language of the court's charge that a want of probable cause is proved if the person causing the prosecution fails to seek the advice of counsel or if he does not make to counsel a full and fair statement of the facts. It is, of course, true that a complete defense of probable cause may exist without the accuser having sought or taken the advice of counsel. If he has reasonable grounds to believe, and does in fact honestly believe, that the criminal charge is well founded, then he has probable cause for prosecuting the accused regardless of whether he has or has not consulted counsel. In the instant case the defendant pleaded in his answer, as one of his affirmative defenses, that before swearing to the criminal complaint against Mrs. Shaffer he consulted the deputy city prosecutor; that he made to the latter a full and fair statement of all the facts within his knowledge; and that he was advised by the deputy that the crime of embezzlement had been committed. It was to this particular defense that the instruction in question was directed. In this instruction, as well as in others given by the learned trial judge in the course of his charge to the jury, the court was careful to say that a person who causes the arrest of another is not liable therefor unless he acts through malice and without probable cause. In one of its instructions the court specifically charged the jury that it is incumbent upon plaintiffs to prove both malice and want of probable cause, and that, "on the other hand, the defendant has the right to prove that he acted in good faith, without malice and upon probable cause—that is, upon such facts and information as would induce a reasonably prudent man to believe that the plaintiff Mrs. Shaffer had embezzled the amount mentioned in the complaint, to wit, $2.50." In a further instruction the court expressly charged the jury that if they found from the evidence that certain matters were true—

that certain things specifically enumerated by the court were facts—then they should find that defendant did have probable cause. In the instruction last referred to, nothing whatever is said by the court about seeking the advice of counsel. The entire charge to the jury must be read and considered as a whole. When so considered, it is not possible that, from what was said by the court when specifically charging the jury with respect to one particular affirmative defense set up in defendant's answer—the defense arising out of the advice alleged to have been given to him by counsel—the jurors could have inferred that if a person does not seek the advice of counsel, or make a fair and full statement to a person learned in the law, there necessarily is a want of probable cause.

[5] Criticism is made of an instruction whereby the jury was instructed that, to support the defense that he acted upon the advice of counsel, defendant is required to show by a preponderance of the evidence that he made to the deputy prosecuting attorney "a full, fair and true statement of all the material facts known to him, *of which he had and knew the means of ascertaining,*" and that if defendant "had reasonable grounds for believing that other facts existed which would tend to exonerate Mrs. Shaffer from the charge of embezzlement, good faith requires that he should have either made further inquiry with reference to those facts and circumstances and communicated the information obtained to counsel, or that he should inform counsel of his belief in their existence in order that the counsel might investigate with reference to them and take into account, in forming his opinion, the information obtained with reference to them." A substantially identical instruction was considered in *Scrivani v. Dondero,* 128 Cal. 31 [60 Pac. 463], and held to be free from error. The briefs filed in that case show that there, as here, the appellant attacked the instruction upon the ground that it is error to charge the jury that, to justify the defense that the accuser sought and received the advice of counsel, he is required to prove that he stated all the material facts "known to him, *of which he had and knew the means of ascertaining.*" The instruction, nevertheless, was upheld by the supreme court, a hearing in Bank was denied, and we, perforce, are bound by that decision.

The trial court refused to give an instruction requested by defendant charging the jury that if they believed in the existence of certain alleged facts, then they should find that there was probable cause for the criminal charge. In refusing this instruction the court committed no error. Upon this particular matter the jurors were fully and fairly charged in a carefully prepared instruction given by the court, whereby they were told, in effect, that to justify a finding that there was not probable cause they must find that the $2.50 was collected "in accordance with the contract" between Mrs. Shaffer and defendant. This language of the court's instruction is a complete answer to the point specifically presented by appellant as his reason why the refusal to give his requested instruction was prejudicial error.

[6] Some other questions are presented by the record, but none, in our judgment, that requires consideration, except that of whether the verdict is excessive notwithstanding plaintiff's remission of $4,000 in compliance with the trial court's conditional denial of defendant's motion for a new trial. Mrs. Shaffer was in actual confinement but a few hours. She secured her release on the deposit of $10 as bail. The fee charged by the attorney who appeared for her in the police court was but $10. She does, it is true, complain of the publicity that attended her arrest, and also of certain distressing but natural and not unusual circumstances which are said to have occurred while she was in the lieutenant's office at the University police station awaiting her release on bail that her husband meanwhile was endeavoring to procure. But beyond these natural and not unusual concomitants of arrest and temporary detention, there were no special circumstances of aggravation. The case was one where but $10 could be assessed for actual expenses, together with general compensatory damages and damages by way of punishment. Under these circumstances, it appears to us quite clear that the verdict, even as reduced under the order made by the trial court, is still outrageously excessive and grossly disproportionate to any injury that plaintiffs may have received and to any punishment that properly could be inflicted upon defendant. There is, it is true, no inflexible or definite rule by which courts can be governed in reviewing verdicts in such cases

as this. But that, in actions such as this, we have the power, and that it is our duty, to order a new trial where we are satisfied that the amount assessed against the defendant is excessive unless the plaintiff shall file a *remittitur* of damages, is thoroughly established in this state. (*Phelps* v. *Cogswell,* 70 Cal. 201 [11 Pac. 628]; *Russell* v. *Dennison,* 50 Cal. 243; *Daves* v. *Southern Pac. Co.,* 98 Cal. 13 [35 Am. St. Rep. 133, 32 Pac. 708].) Whilst we do not desire to restrict juries within very narrow limits in assessing damages in this class of cases, we are impelled to the conclusion, after a careful consideration of all the circumstances of the case, that a verdict for more that $2,000 would so far exceed all reasonable bounds as to raise a just presumption that it proceeded from passion and prejudice.

The judgment is reversed and the cause remanded for a new trial, unless, within thirty days from the filing of the *remittitur* in the court below, plaintiffs shall remit from the judgment all except the sum of $2,000 and the costs as at present adjudged therein, neither side to recover from the other costs on this appeal. If such remission be so made, then and in that event the judgment shall stand affirmed; otherwise it shall stand reversed and the cause shall be retried.

Works, J., and Craig, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on December 27, 1921.

All the Justices concurred, except Lawlor, J., who was absent.

Richards, J., *pro tem.,* was acting.