[Civ. No. 4762. Third Appellate District.—March 8, 1934.]

JOE SELVESTER, Respondent, v. HORACE KENNEDY, Appellant.

U. S. Webb, Attorney-General, Jess Hession, Deputy Attorney-General, and Albert F. Ross, District Attorney, for Appellant.

L. C. Smith for Respondent.

PLUMMER, J.—This action was begun by the plaintiff against the defendant Horace Kennedy and one J. K. Miller, to recover damages in the sum of $6,600 for and on account of alleged malicious prosecution. Judgment was entered against the appellant in this action for the sum of $1600 and costs. From this judgment the defendant, Kennedy, appeals.

The record shows that the plaintiff, at the time of the beginning of this action, was, and prior thereto had been, a rancher and stockman residing in the western part of Shasta County, a region but sparsely settled. The plaintiff's home or residence is situate on the southerly side of the main county road running northeasterly and southwesterly from the city of Redding. This place is also just west of the north fork of Cottonwood Creek, which runs in a northerly and southerly direction. Four or five miles farther east is Duncan Creek, running about parallel with the north fork of Cottonwood Creek. Between the two streams there are a couple of ridges or mountains. This country is uninhabited. A branch of the north fork of Cottonwood Creek is known as "Long gulch".

On September 3, 1931, a fire was discovered in Long gulch. The defendant Miller and a crew of fire-fighting men went to the scene late in the afternoon and put the fire out. There had been no lightning nor storms of any kind, nor any known way that the fire could have started except by being set. Near the scene of the fire some horse tracks were discovered leading down from the point of the

fire to the county road, near the place where the north fork of Cottonwood Creek crosses the road. The horse tracks passed through two closed gates, which would have to be opened to permit the passage of animals. These tracks led down along the county road to a gate belonging to the plaintiff, and then into and on his property. The investigators or trackers found similar tracks leading up Duncan Creek three or four miles to the east of a place known as the "Graves" place.

On the morning of September 3, 1931, the plaintiff had stopped at the Graves place on his way up Duncan Creek, borrowed some salt, stating that he was going up the creek to salt some cattle. These tracks were followed a mile or two up Duncan Creek. No returning tracks were found. On the morning in question the testimony shows that the plaintiff was riding a gray horse at the time he stopped at the Graves place. A short time after the tracks had been traced from the scene of the fire to the Selvester home, some of the witnesses hereinafter mentioned called at the home of the plaintiff, found him riding a gray horse making tracks similar to those which had been followed from the scene of the fire to the home of the plaintiff, and which tracks, as we have stated, passed through three closed gates. The record shows that the plaintiff called at the Graves place at about 8:30 in the morning, and that he was seen at his mail-box at a point between three and four miles from the scene of the fire, about 1 o'clock, or shortly thereafter in the afternoon.

The appellant in this action was called to Shasta County for the purpose of investigating the fire. Following the discovery of the tracks, as we have stated, the appellant, accompanied by J. A. Miller and W. J. Hufford, went to the home of the plaintiff and had a conversation with him relative to the fire. The testimony in relation thereto will be set out later.

After having been told by the various witnesses who followed the tracks of the horse from the scene of the fire to the home of the plaintiff, and after the interview which we have just mentioned, had with the plaintiff, the appellant went to the district attorney of Shasta County and related to him and to his deputy the facts and circumstances that had been brought to his attention, whereupon there was

delivered to him a warrant for the arrest of the plaintiff. A complaint charging the plaintiff with setting the fire just referred to was sworn to by the appellant before a justice of the peace, and a warrant was issued for the arrest of the plaintiff. Following this the plaintiff was arrested, released on bail, and it being discovered that the fire had started and burned over land belonging to the United States government, this action was dismissed and proceedings were instituted before the United States commissioner at Redding, a new complaint was filed, and a warrant of arrest was issued for the apprehension of the plaintiff. Upon hearing, the plaintiff was discharged. Subsequent to the proceedings which we have just stated, this action was begun to recover damages for alleged malicious prosecution.

Three questions are presented upon this appeal, to wit:

1st. Was the action begun without probable cause?

2d. Was the action of the appellant malicious?

3d. Are the damages awarded excessive?

The answer to question number one is determinative upon this appeal if it is found that probable cause existed for the apprehension of the plaintiff.

The record shows that a distance of some four and one-half miles intervened between the point on the Duncan trail (to which the plaintiff stated he was going on the morning of September 3, 1931), and the place where the fire started, the argument being made by the respondent that the intervening territory is such that no horse or rider could negotiate that strip of territory. However, there is some testimony in the record by a witness to the effect that he passed over that section of country at least once a year for several years. The distance from what is called the "Baker" place on the Duncan trail (to which the plaintiff stated he was going on the morning of September 3, 1931), back to the county road, down to the scene of the fire and back to the mail-box, at which the plaintiff was seen shortly after 1 o'clock of the same day, is given as thirteen and one-half miles by some of the witnesses, and that the trip could be made in four and one-half hours. So far as we have been able to discover, the record shows no explanation of the tracks from the scene of the fire, along the country road up to the mail-box belonging to the plaintiff, and from there to his residence, or that there was any other horse entering the plaintiff's premises, making tracks similar to

those made by the gray animal on which the plaintiff was riding on the day of the fire, and was subsequently seen riding by the investigators or trackers. It may also be stated that the record discloses no tracks leading down the country road to the scene of the fire. The tracks which we have mentioned were followed out of the field leading to the fire, and then down the county road away from the fire up to the mail-box which we have mentioned, and then to the appellant's home. Accepting the testimony of plaintiff's own witnesses, at least four and one-half hours elapsed from the time he was seen at the Graves place until he was later seen at his mail-box.

The circumstances surrounding this case which were presented to the appellant prior to the swearing of any complaints by him are best shown by the testimony of the witnesses contained in the record of this case, and will establish, we think, beyond controversy, probable cause.

The witness Maupin testified that the distance between the Baker place and the scene of the fire was about four and one-half miles; that it was about three miles from the fire to the Selvester place; that he had ridden over that country a great many times; that it would take about two hours with a good horse to ride from the Baker place to Long gulch where the fire occurred; that it would take about one and one-half hours to ride from the Graves place to the Baker place; that it would take about one and one-quarter hours to ride from the scene of the fire on Long gulch to the plaintiff's mail-box, which would bring the plaintiff back to his mail-box on the third day of September, 1931, within an elapsed time of only about fifteen or thirty minutes difference from the admitted time when the plaintiff was seen at the mail-box.

The witness Maxey testified that he was familiar with the territory between the Baker place and the scene of the fire; that he had had occasion to go from the Baker place across the country to where the fire occurred at Long gulch, many times; that one could go through without much trouble; that the distance from the Graves place to the Baker place was six miles; that it would ordinarily take one and one-half hours or an hour and three-quarters to ride from the Baker place to the Graves place; that it would take about two hours from the Baker place to Long gulch;

that it would take three-quarters of an hour to ride from the fire to the Selvester gate. This testimony is to the effect that it would take from four and one-quarter to four and one-half hours to ride from the Graves place to the Baker place, then, to Long gulch, the scene of the fire, and back to the Selvester gate or mail-box. The tracks of the horse in question were stated by the trackers to show a peculiar skid, and were readily traceable along the county road from the scene of the fire to the plaintiff's residence; that they were traced from the Graves place up the Duncan trail, which would lead to the Baker place, but no returning tracks were found, which would indicate, as claimed by the appellant, that the rider of the horse in question proceeded from the Baker place across the intervening country to the scene of the fire at Long gulch, and then back through the enclosed field, passing through two gates onto the county road, and then to the Selvester place.

The witness Miller testified that he had lived in Shasta County some forty years; occupied the position of state fire warden; that the investigation was made by himself and Officer Hufford, and later, with the appellant; that when he first saw the horse tracks they were right in the gulch inside the fire line; that the tracks led in the direction of the county road; that he followed these tracks to the county road, and up the county road to Selvester's mail-box, and then they turned back and went through Selvester's gate into a field belonging to the appellant; that a horse had come out of that gate, and made a track identically the same as the one that had gone in; that the tracks went through two wire gates that were shut; that the tracks went about twenty-five steps to the county road in a southwesterly direction, and turned west to the Selvester mail-box, and from the mail-box twenty-five steps, and went through a gate belonging to the plaintiff; that this gate was closed, and made of panel boards; that a peculiarity of the horse tracks at the place of the fire was that he picked his feet up like he took the dirt out of his toe tracks, and he probably slid that far with his hind heels in the dust, and would not go down until he slanted his foot, both hind feet, and that that was characteristic of the tracks from the place on the burned area up along through the entire course down to the Selvester gate; that he was aware these tracks had gone up the road towards Mr. Graves' place and then

up where the Duncan trail leaves the county road, they had gone up that trail; that he followed the tracks up along Duncan trail probably a mile; and could see the tracks; noticed the same characteristics about the tracks; that when he went down to the Selvester place with Kennedy and Hufford, he saw the horse that Selvester was riding that day, saw him ride in that evening on a gray horse, noticed the kind of tracks the horse made; that they were the same kind of tracks that he had traced; that he saw no other horses in the vicinity of the fire the day he traced the tracks down on that range; that there were no tracks coming back from the Duncan trail or by the Graves place.

The witness Forschler, who occupied a lookout watching for fires, testified that he could not see the location of the fire at Long gulch from his lookout station. The witness Ferguson testified as follows: "We followed the tracks from somewhere about the point of the fire down to what they call Cottonwood creek, a gate, I should judge about two miles, between two and three miles from the fire, and from there through to the county road, the gate there, and from that gate we tracked it across to another gate on the opposite side of the highway where the Harrison gulch road is, and from there to Mr. Selvester's mail box and from there to Mr. Selvester's gate."

The witness Woodfill testified: "We followed it [tracks] down what they call Long gulch into the middle fork of Cottonwood creek and then down Cottonwood to the first gate that led into the Graves pasture and then down to the second gate on the county road and then along the county road to Mr. Selvester's mail box and then from the mail box back to his gate and then inside his field about 25 yards." Several witnesses testified to the peculiarity of the horse tracks in question.

The witness Hufford further testified: That he noticed the tracks were heavy behind; that the horse apparently picked up the dirt with his toes and slid the hind feet forward. On September 9th he saw the horse that Selvester was riding at Selvester's place; that he observed the tracks that the horse made at that time; that the horse came around the barn and went into the barn. He compared the tracks and they were similar to those that he had previously followed. The record shows that the appellant went with

this witness and had pointed out to him some of the tracks referred to herein. This witness testified that he went with Kennedy to the Selvester place; that the appellant said to the plaintiff: "I am a special investigator for the State Forest Service. I came up here to investigate these fires"; that plaintiff said, "I don't know anything about any fires"; that Kennedy said, "I didn't ask you that"; Kennedy then asked, "Where were you on September 3d?" The plaintiff replied, "I went up Duncan Creek"; the appellant said, "Well, you didn't come back down Duncan Creek"; the plaintiff replied, "I did"; appellant stated, "The tracks don't show it"; the plaintiff then said, "I won't talk to you; I don't want to talk to you"; the appellant replied, "I don't believe we will talk to you in this frame of mind. Will you be home tomorrow?" The plaintiff said he would. This witness testified that he went with the appellant to the district attorney's office the next day; had an interview with the deputy district attorney; that Kennedy told the deputy district attorney that they had tracked a horse off the hills, and he outlined the case and asked for a warrant, which was issued; that the deputy district attorney prepared and gave Mr. Kennedy a complaint and warrant, and wrote out some instructions for the justice of the peace.

The witness Miller further testified that he showed Kennedy the tracks leading from the fire, and also had discovered the way the tracks led from the Graves place going up the Duncan trail. Miller further testified that he told Kennedy that he could make the trip up the prong of the creek (Duncan trail); that the plaintiff had probably not gone up very far, and Miller said he could make the trip in a day; that he probably went up to what is known as "Ditch Fork", and then crossed over the ridge and came down by way of the fire.

All of the circumstances which we have detailed, as testified by the various witnesses, the record shows to have been made known to the appellant prior to the swearing to the complaints by him which led to the apprehension of the plaintiff. There is testimony in the record to the effect that one could not very well make the trip from the Baker place across the country to Long gulch, the scene of the fire, but the truth of that statement is not material. The

appellant in this case was advised that such a trip could be made. He was also informed of tracks which led from the Graves place up the Duncan trail, and that there were no returning similar tracks, and therefore, that the horse making such tracks must have taken a course across the country to the scene of the fire because from the scene of the fire the plaintiff was informed that there were similar tracks leading from the very vicinity of the fire through two gates, then on to the county road, along the county road up to a mail-box belonging to the plaintiff, and then from there to the plaintiff's residence; then, upon going to the plaintiff's residence, a light colored horse was found making similar tracks, being ridden by the plaintiff. The interview which followed exhibited a disinclination on the part of the plaintiff to have any conversation with his visitors upon the subject of the fire.

The facts and circumstances in this case are strikingly similar to the case of *Moore* v. *Durrer*, 127 Cal. App. 759 [16 Pac. (2d) 676], where a horse making a peculiar track was traced from near the scene of the fire to the residence of the plaintiff, who was subsequently sued for damages resulting from the fire, and also a case where the district attorney refused to issue a warrant. The action was begun by Moore against Durrer for malicious prosecution. This court, in reviewing the facts set forth in that case relative to the horse tracks which were followed, and which were shown to be similar to the tracks made by a horse belonging to the plaintiff, in that action came to the conclusion that the trial court was correct in directing a verdict for the defendant on the ground that probable cause had been shown. In that case this court said: "Probable cause does not depend upon the possession of facts which satisfactorily prove the guilt of an accused person. It is adequate proof of the existence of probable cause that one is possessed of information or facts which are sufficient to cause a reasonable person to honestly believe the charge is true." (Citing a number of cases.) It is further said: "Where the circumstances are admitted, or clearly proved by uncontroverted testimony, it is the province of the court to determine the question of probable cause, and the court may order a nonsuit." (Citing a number of cases.) "Probable cause" is further defined in the opinion in that case as follows: "It is

defined as 'a suspicion founded upon circumstances sufficiently strong to warrant a reasonable man in the belief that the charge is true'.'' (Citing a number of cases.)

██ It is not a question of whether the person filing the complaint has sufficient evidence before him to establish the fact of guilt beyond reasonable doubt. It is only necessary that there are facts within the possession of the one swearing to the complaint, either by his own acquisition of knowledge, or the information brought to him by witnesses, to establish in the mind of a reasonable person a belief that the one charged is guilty of the offense.

In 16 California Jurisprudence, page 737, the text reads: ''To make out a cause of action for malicious prosecution one must show that the proceedings complained of were prosecuted without probable cause. Actions for malicious prosecution have never been favored in law. The interests of society demand that private wrongs be redressed and crimes brought to light, and, to that end, that whoever believes on reasonable grounds that a civil wrong has been done or a crime committed may institute appropriate legal proceedings without danger. For the purpose of protecting him in so doing, it is the established rule that if he have reasonable grounds for his belief, and act thereon in good faith, he shall not be subjected to damages merely because the accused is not convicted or the action is unsuccessful.''

In 18 Ruling Case Law, page 36, ''probable cause'' is thus dealt with: ''The question of the presence or absence of probable cause for a criminal prosecution does not depend upon the guilt or innocence of the accused or upon the fact whether or not a crime has been committed. If a person acts upon appearances in making a criminal charge, and the apparent facts are such as to lead a discreet and prudent person to believe that a crime has been committed by the party charged, although it turns out that he was deceived, and the party accused was innocent, yet he will be justified.''

There is nothing in the record which indicates that the information brought to the appellant came from unreliable sources, or from any persons other than those desirous of calling to his attention the exact facts and the circumstances which had come to their own knowledge. The facts of the existence of the tracks to which we have referred, the course

traveled by the horse making the tracks, and the ownership of the gray horse, stands undenied in the record. All the denial of the plaintiff in the record is to the effect, or that could be construed as controverting any of the testimony which we have set forth, is the statement of the plaintiff that he returned from the Baker place down along the Duncan trail. There is no denial that a horse making similar tracks from the scene of the fire could be traced directly along the highway through the fields and through the gates, past the mail-box to the residence of the plaintiff. The only controverting testimony is, as we have stated, that one could not pass over the intervening country between the Baker place and Long gulch, the scene of the fire. On the other hand, the appellant had been advised that that country could be negotiated without trouble, just as the witnesses testified at the trial.

In view of what we have stated, the conclusion seems to us unescapable that the appellant had probable cause for swearing to a complaint charging the plaintiff with setting the fire which occurred on the third day of September, 1931. This renders it unnecessary for us to consider the question of malice, or that the court erred in the admission of testimony concerning a telephone conversation.

The judgment is reversed.

Thompson, J., and Pullen, P. J., concurred.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 7, 1934.