[Civ. No. 9730. First Appellate District, Division One.—June 17, 1936.]

JOE PERRY, Respondent, v. WASHINGTON NATIONAL INSURANCE COMPANY (a Corporation) et al., Appellants.

J. F. Riley for Appellants.

Elmer P. Delany and Paul F. Fratessa for Respondent.

KNIGHT, J.—Plaintiff sued for damages on a complaint containing four counts. The first was for assault and bat-

tery, the second for false imprisonment, and the third and fourth for malicious prosecution. The litigation grew out of an altercation which took place in the San Francisco offices of the defendant insurance company between ·plaintiff and three of the company's employees, named Russell George, G. L. and J. A. Smith, over the possession of a check which had been handed to plaintiff by George in settlement of accident insurance, and which plaintiff attempted to take away with him, so defendants claim, without first signing the requisite receipt therefor which was attached to the check and handed to plaintiff at the same time. The malicious prosecution counts were based on two criminal complaints sworn to by G. L. and J. A. Smith, respectively, charging that plaintiff had committed battery upon them after they had regained the check. Plaintiff made the insurance company and all three employees parties defendant to the action, but the summons was not served on J. A. Smith, and at the close of plaintiff's case he dismissed the action as to J. A. Smith. The jury before which the action was tried returned separate verdicts in plaintiff's favor and against all three remaining defendants on each count, the awards being as follows: $5,300 for assault and battery, $3,000 for false imprisonment, and $2,000 on each of the malicious prosecution counts. Judgment was entered accordingly against said defendants for the total sum of $12,300. Motions for new trial were made and denied and the defendants appeal, urging as grounds for reversal that the evidence is insufficient to sustain any of said verdicts, especially as against the insurance company; that the amounts of the verdicts are grossly excessive and were rendered under the influence of passion and prejudice; and that the court erred in its rulings during the course of the trial, and in its charge to the jury.

The circumstances leading up to the altercation were as follows: Plaintiff, while employed as a laborer on a building in San Francisco, fell and injured his left thigh. He held two accident policies issued by defendant company, which provided for disability benefits. The company, an Illinois corporation having its principal offices in that state, made three payments to plaintiff under said policies through its San Francisco office, and thereupon, believing plaintiff was malingering, notified its local office to effect a final settlement with him if possible; otherwise to make a careful investiga-

tion as to the extent of his disability. In pursuance of such instructions defendant George called on plaintiff and offered him a check for $32.50 in full settlement of his claim, which plaintiff refused to accept, whereupon George requested plaintiff to call at the company's office to adjust the matter. He did so, and upon entering the office took a seat on a bench in the reception room. The defendant George came in, and handing plaintiff a check for $32.50 attached to a separate paper in the form of a printed receipt, explained the proposition to plaintiff and requested him to sign the receipt. Plaintiff is a native of the Cape Verde Islands, having arrived in this country in 1926, and he was not well versed in the English language. However, he took the documents in his hands, examined the check, and noting the amount thereof stated he would not sign the receipt. George proceeded to explain that acting under instructions from his company he could not pay him more than the check called for; whereupon plaintiff detached the receipt and retaining the check stated, according to his testimony, that he wanted to take the check to show to his lawyer and to the insurance commissioner. The testimony as to what actually happened thereafter is conflicting. Plaintiff testified that immediately upon telling George he wanted to take the check away with him George grabbed for the check and it fell from plaintiff's hands to the floor; that George then said, "Get out of here, you nigger," and started to assault him; that the two Smiths then entered the room and all three started striking and choking him, and twisting his arm, and finally threw him through the open doorway to the floor of the corridor; that after lying there for a few minutes he got up and left the premises. The testimony given by the three employees as to what happened was entirely different. They testified that plaintiff stated he would not accept the amount of the check nor sign the receipt; that while George was explaining the matter to him plaintiff detached the receipt, laid it on the bench beside him, and crumpling the check in his hand said he was going to take it to his lawyer and to the insurance commissioner; that he was told he would not be allowed to take the check unless he signed the receipt, but that he insisted on doing so, and still clutching the check in his hand started to get up from the bench to leave the office; that thereupon George and G. L. Smith, who was present during the conversation, attempted

to restrain him and regain possession of the check, but that plaintiff resisted by kicking at them; whereupon J. A. Smith, who had been listening to and watching the altercation from an adjoining room, entered the reception room, grasped plaintiff by the shoulder and held plaintiff's knees between his while George and G. L. Smith pried open plaintiff's hand and the check dropped to the floor; that plaintiff was then released and he instantly arose from his seat, looked straight at J. A. Smith, exclaimed "That's the man I want", and rushed toward Smith, striking at Smith's head several times with a cane which plaintiff carried; that Smith tried to ward off the blows with his forearm and backed into another room, whereupon George and G. L. Smith took hold of plaintiff's arms and forced him out of the room into the corridor; that they then released him and started back toward the reception room door but as they reentered the doorway plaintiff rushed toward the open door and succeeded in striking G. L. Smith on the hand several times with his cane before Smith succeeded in closing the door. Said witnesses further testified that after the door was closed plaintiff hammered on the outside of the door with his cane and tried to open it; that a few minutes later, believing that plaintiff had gone away, J. A. Smith started to leave the office through another door, but was immediately confronted by plaintiff, who rushed at him again and struck him several times with his cane before he could retreat into the office. Meanwhile George summoned the police, but plaintiff disappeared before the officer arrived.

The officer inquired about the trouble and after it was explained to him he advised the Smiths to go to the bond and warrant clerk of the district attorney's office and swear to criminal complaints charging plaintiff with battery. Acting upon such advice, the Smiths, accompanied by George, went at once to said office and laid before the bond and warrant clerk, who is a practicing attorney, all of the facts; they also exhibited to him the bruises inflicted upon them as a result of the blows from plaintiff's cane; whereupon the bond and warrant clerk issued a so-called citation, requesting plaintiff to appear at said office within a certain time and give any reason he might have why warrants should not issue for his arrest on charges of battery. The citation was served by a police officer, but plaintiff ignored it, and at the end of the limitation of time fixed therein, to wit, on the fourth day

after it was served, G. L. and J. A. Smith returned to the office of the bond and warrant clerk, as instructed by him, and two complaints were prepared by said officer charging plaintiff with battery; and acting under his advice the Smiths took the complaints before a municipal judge and swore to them. Warrants of arrest were issued and served on plaintiff, and he was confined in jail for approximately an hour before being released on a $50 bond. Subsequently his trial took place in the municipal court before a jury on the J. A. Smith charge and he was acquitted; whereupon the G. L. Smith charge was dismissed.

■ . With respect to the first cause of action, it is evident that the testimony given by plaintiff as to the circumstances under which the alleged assault occurred, although contradicted by the other three participants in the quarrel, is legally sufficient to sustain the jury's conclusion that plaintiff was entitled to reasonable damages under the first count charging assault and battery. ■ There is a conflict of evidence also as to the nature and extent of plaintiff's injuries, and in that state of the record and particularly in view of the testimony given by plaintiff's physician it cannot be successfully maintained that the amount of damages awarded under the first count was the product of passion and prejudice, especially since under the pleadings the jury was entitled to allow both general and exemplary damages.

■ Furthermore, there is sufficient evidence to charge the defendant company with liability for the acts of its employees for the reason that it appears without conflict that the alleged assault was committed in the company's office by its employees in their efforts to regain from plaintiff possession of the company's check which they had handed to plaintiff pursuant to directions from the company to bring about a final settlement of plaintiff's disputed claim for insurance. The other points relating to the first cause of action are without merit.

■ We are of the opinion, however, that as defendants contend, the evidence wholly fails to establish a case of either false imprisonment or malicious prosecution against any of said defendants. With respect to the former, it is admittedly essential to show some unlawful detention of plaintiff's person, and here, according to plaintiff's own story, he was in no way detained by any of the defendants. On the contrary,

he insisted at the trial and he contends on this appeal, that as soon as the argument started over the check he was instantly and forcibly ejected from the room. Therefore, taking plaintiff's own version of the quarrel, defendants were entitled to an instructed verdict on the second count.

 And with regard to the causes of action for malicious prosecution, it is well established, as pointed out in *Haydel* v. *Morton*, 8 Cal. App. (2d) 730 [48 Pac. (2d) 709], and *Richter* v. *Neilson*, 11 Cal. App. (2d) 503 [54 Pac. (2d) 54], that the burden is always upon the plaintiff to establish the concurrence of two indispensable elements, first, that the defendant acted without probable cause, and secondly, that he was actuated by a malicious motive. (*Griswold* v. *Griswold*, 143 Cal. 617 [77 Pac. 672]; *Moore* v. *Durrer*, 127 Cal. App. 759 [16 Pac. (2d) 676]; *Davis* v. *Pacific Tel. & Tel. Co.*, 127 Cal. 312 [57 Pac. 764, 59 Pac. 693]; *Carpenter* v. *Ashley*, 15 Cal. App. 461 [115 Pac. 268].) As shown also in the Haydel and Richter cases, *supra*, the term "probable cause" as used and applied in the law of malicious prosecution has been defined to be a suspicion founded upon circumstances sufficiently strong to warrant a reasonable man in the belief that the charge is true (*Johnson* v. *Southern Pacific Co.*, 157 Cal. 333 [107 Pac. 611]; *Lee* v. *Levison*, 173 Cal. 166 [159 Pac. 438]; *Selvester* v. *Kennedy*, 137 Cal. App. 250 [30 Pac. (2d) 63], and cases cited therein); and in this connection it has been repeatedly held that the existence of probable cause is not negatived merely by a showing that the accused has been able at the trial of the criminal charge to obtain an acquittal; that such favorable determination does not even create a conflict on the issue of probable cause. (*Haydel* v. *Morton, supra; Dunlap* v. *New Zealand F. & M. I. Co.*, 109 Cal. 365 [42 Pac. 29]; *Moore* v. *Durrer, supra; McKenna* v. *Heinlen*, 128 Cal. 97 [60 Pac. 668].) Furthermore, as indicated, even though a want of probable cause is shown, malice also must be affirmatively established (16 Cal. Jur. 735; 18 R. C. L. 28); and it is held, therefore, that though it be found that the facts upon which the person bases the charge do not in point of law constitute a crime, if they are of such character as to induce in the mind of a reasonable person the honest belief that an offense has been committed and the accuser is not actuated by improper or sinister motives, he shall not be held liable in damages afterwards for

having caused the arrest. (*Dunlap* v. *New Zealand F. & M. I. Co., supra;* 16 Cal. Jur. 741; *Ball* v. *Rawles,* 93 Cal. 222 [28 Pac. 937, 27 Am. St. Rep. 174].)

Moreover, as stated in the Richter case, *supra,* it has long since been the law that if in addition to his own belief a defendant proves that before commencing the prosecution of the action alleged to be malicious he sought the legal advice of an officer selected by the people to prosecute offenders against laws, and in good faith fully and fairly disclosed to that officer all the information he possessed, and he advises that a crime has been committed and the prosecution is instituted upon a complaint prepared by that officer, the defendant has made out a complete defense to the action (*Dunlap* v. *New Zealand F. & M. I. Co., supra;* 16 Cal. Jur. 741, and cases cited under note 12; *Ball* v. *Rawles, supra; Hahn* v. *Schmidt,* 64 Cal. App. 284 [30 Pac. 818]), however erroneous such advice may have been (*Potter* v. *Seale,* 8 Cal. 218, 226; 18 R. C. L. 45).

In view of the foregoing legal principles it is our conclusion that plaintiff failed to meet the burden of establishing either want of probable cause for the arrest or that in swearing to the criminal charges the Smiths were actuated by motives imputing bad faith and want of honest belief in the truth of said charges. Furthermore, it would appear beyond question that under the decisions cited the undisputed fact that the Smiths first sought and then acted under the advice of counsel in filing said charges constituted a complete defense to any action for malicious prosecution based on said charges.

In support of his contention that the Smiths were actuated by malice in causing his arrest, plaintiff makes two points. The first is based on his own testimony to the effect that on the day following the altercation the local manager of defendant company, J. A. Shelnutt, called on him at his home and stated that if he "did not settle the case the company was going to put him in jail". The second is that after the warrants were issued George and G. L. Smith went along with the police officers to plaintiff's home when the warrants were served and accompanied them back to the Hall of Justice. As to the first point, Shelnutt denied not only having made such statement, but also having visited plaintiff at all subsequent to the altercation in the office. But resolving the

conflict in plaintiff's favor and assuming that Shelnutt did make such statement, it is evident that neither of the Smiths can be held responsible therefor because admittedly neither was present at the time the alleged statement was made nor is there any testimony whatever to show that either of them ever knew anything about Shelnutt's activities or that they directly or indirectly acquiesced in or authorized him to make any statement in their behalf. ▋ And as to the second point, the circumstance referred to happened, as will be noted, after the issuance of the warrants, and consequently cannot be considered as evidence establishing want of probable cause for the arrest or of malice on the part of either of the Smiths in swearing to the complaints for the reason that under the authorities such elements must be determined from the facts as they existed at the time the charge was preferred. (*Richter* v. *Neilson, supra; Harkrader* v. *Moore,* 44 Cal. 144; *Griswold* v. *Griswold, supra.*)

▋ Nor is there any merit in plaintiff's contention that in obtaining said warrants of arrest the Smiths did not fully and fairly disclose to the prosecuting officer all of the facts of the case. Obviously, it was impossible for them to relate, as plaintiff seems to contend they should have done, his version of the altercation as afterwards disclosed by him at the trial of the criminal action for the reason that at no time prior to said trial did the Smiths have any intimation that he would deny the truth of their statement as to how it happended; and much less did they know, prior to the issuance of the warrants, that if he did make such denial what his version of the altercation would be. The very purpose of the citation was to ascertain from him if possible, before filing the formal criminal charges, what his side of the controversy was, and to afford him full opportunity to refute any statements the Smiths had made in applying for said warrants. But as stated, plaintiff ignored the citation and within the four days allowed therefor did not avail himself of the opportunity to explain. Consequently, at the end of that time the criminal complaints were prepared and sworn to and the warrants of arrest were issued. It is true, of course, as plaintiff contends, the defense of advice of counsel is not available to an accuser who has failed to reveal to a prosecuting officer material facts known to the accuser or of which he has the means of ascertaining, which would tend to exonerate the

accused. The case of *Shaffer* v. *Arnaelsteen,* 54 Cal. App. 719 [202 Pac. 946], affords a good illustration of the proper application of such doctrine. There the defendant caused the arrest of the plaintiff, Mrs. Shaffer, on a charge of embezzling $2.50; and in applying the above doctrine to the facts of that case the decision points out that the defendant in seeking the warrant of arrest failed to reveal to the prosecuting officer numerous material facts, particularly that the sum involved had been appropriated by plaintiff openly and avowedly under the claim of title preferred in good faith, which, of course, was sufficient to destroy the essential element constituting embezzlement, and if known to the prosecutor would have resulted in a refusal to sanction the arrest. Here, however, the Smiths charged plaintiff with having committed acts of violence upon them, and so far as our attention has been called, there was no evidence introduced which justifies the reasonable conclusion that at the time they consulted the prosecuting attorney they withheld or suppressed any material facts within their knowledge or which upon inquiry they might have ascertained, tending to exonerate plaintiff, or that at that time or thereafter they did not believe in the absolute truth of the statements they made to said officer; nor were there any circumstances which would tend to prove that in making said charge they did not act honestly and in good faith. For the reasons stated, plaintiff failed to bring his case within the scope of the legal doctrine applied in the Shaffer case.

And finally it may be said here, as in the Haydel and Richter cases, that the courts of this state have often declared that for reasons of public policy actions for malicious prosecution have never been looked upon with favor; and while they have been readily upheld when the proper elements thereof have been established, they are sustained only when it is shown that the prosecution was in fact actuated by malice and the party instigating the same had no reasonable ground for causing the prosecution. The main reason given for so declaring is that it is for the best interests of society that any person who has good reason to believe the law has been violated shall have the right to cause the arrest of the offender; and that consequently for his protection in so doing it is the established rule that if, as here, he has reasonable ground for his belief, and acts thereon in good faith, he shall

not be mulcted in damages merely because the accused is able at the trial of the criminal action to establish that no crime was committed or that he is innocent. (*Ball* v. *Rawles, supra; Lacey* v. *Porter,* 103 Cal. 597 [37 Pac. 635] ; *Haydel* v. *Morton, supra,* and cases cited therein; *Dunlap* v. *New Zealand F. & M. I. Co., supra.*)

In conformity with the foregoing conclusions it is ordered that the judgment be affirmed as to the first cause of action and reversed as to the second, third and fourth causes of action; that a revised judgment for $5,300 be entered in plaintiff's favor in accordance with the verdict rendered on said first count, and that the costs of appeal be equally divided between plaintiff and the defendants.

Tyler, P. J., concurred.

Cashin, J., dissented and on June 29, 1936, filed the following opinion:

CASHIN, J., Dissenting.—I dissent from that part of the decision by the majority of this court denying plaintiff the right to recover for malicious prosecution. As stated in the majority opinion, the actions grew out of an altercation at the office of the corporation defendant. The plaintiff alleged and testified that at that time and place defendants Smith and defendant George, who were in the employ of the corporation, committed a battery upon him, causing him severe physical injury, as to the extent of which he was corroborated by a physician. According to the plaintiff, he committed no assault or battery upon anyone, and the injuries he suffered were wholly without justification. The jury so found and, as stated in the majority opinion, the evidence was sufficient to sustain this conclusion. Upon the malicious prosecution counts, however, the opinion holds that the plaintiff has not established grounds for recovery.

Defendants Smith and George testified that after the occurrence at the company's office they, with the other defendant Smith, visited the office of the district attorney and gave his deputy an account of what had happened, and that, upon his advice that the plaintiff was guilty of an offense, complaints charging him with the crime of battery were sworn to and filed. The story related to the deputy was in substance that the plaintiff had committed an unjustifiable bat-

tery upon both the defendants Smith. But, according to the plaintiff, this was untrue, and, as stated, this issue was found in his favor. The defendants Smith and defendant George were present when the alleged battery was committed and knew of their own knowledge all that occurred. If plaintiff's version was true, then their statements to the deputy were necessarily and knowingly false; and such must have been the conclusion of the jury as shown by the verdict. (*Robinson* v. *McKnight,* 103 Cal. App. 718 [284 Pac. 1056].) As held in the majority opinion, if the defendant in good faith fully and fairly discloses to the prosecuting attorney the facts in his possession, and the attorney advises that a crime has been committed, and a prosecution is instituted, this is a defense to an action for malicious prosecution. Under the rule if the defendant in such an action is to be protected he must act in good faith, fully and fairly disclosing the facts within his knowledge; but he does not act in good faith where he makes a garbled and untrue statement of the facts. (*Wild* v. *Odell,* 56 Cal. 136; *Franzen* v. *Shenk,* 192 Cal. 572 [221 Pac. 932]; *Starkweather* v. *Eddy,* 210 Cal. 483 [292 Pac. 467]; *Foster* v. *Banks,* 112 Cal. App. 622 [297 Pac. 106]; *Robinson* v. *McKnight, supra;* 38 Cor. Jur., Malicious Prosecution, sec. 78, p. 432.) From such misstatements malice might be inferred, the question being one for the jury. (*Lacey* v. *Porter,* 103 Cal. 597 [37 Pac. 635]; *Seabridge* v. *McAdam,* 108 Cal. 345 [41 Pac. 409]; *Burke* v. *Watts,* 188 Cal. 118 [204 Pac. 578]; *Franzen* v. *Shenk, supra; Torney* v. *Petersen,* 109 Cal. App. 560 [293 Pac. 653].) These issues were also submitted to and passed upon by the jury; and their verdict thereon, being for the plaintiff upon conflicting evidence, is conclusive. (*Green* v. *Stewart,* 106 Cal. App. 518 [289 Pac. 940].)

In this connection it has been suggested that defendants were also advised by a policeman, who was called after the altercation, that they should file a criminal complaint against the plaintiff, and that this advice in some manner justified their action; but no case has been cited where the advice of a police officer has been held to be a justification.

It seems plain that if the plaintiff can recover upon the assault and battery count, he has also established his causes of action for malicious prosecution; and if not, that no ground for a recovery upon any count of the complaint has

been shown. The right to recover, however, does not necessarily mean that he is entitled to all the jury awarded him.

After plaintiff's arrest he was detained for about an hour; and the facts are almost identical with those in *Shaffer* v. *Arnaelsteen*, 54 Cal. App. 719 [202 Pac. 946], where it was held that any award over $2,000 for a similar detention would be excessive. This sum, under the circumstances in the present case, would seem to be a fair award. Though a verdict appears excessive or should be reduced, it does not follow that the jury was influenced by prejudice or passion. (*Swett* v. *Gray*, 141 Cal. 63 [74 Pac. 439]; *Turner* v. *Whittel*, 2 Cal. App. (2d) 585 [38 Pac. (2d) 835]); nor does the evidence here fairly support that conclusion.

I am of the opinion that that part of the judgment entered on the verdicts returned on the third and fourth counts, namely, for malicious prosecution, and which aggregate $4,000, should be reversed and the cause remanded for a new trial on these counts unless the plaintiff shall remit therefrom the sum of $2,000; but that if such remission be made, then that part of the judgment to the extent of $2,000 should stand affirmed.

A petition for a rehearing of this cause was denied by the District Court of Appeal on July 17, 1936.