[L. A. No. 11482. In Bank.—March 16, 1932.]

JOHN G. McAFEE, Appellant, v. LOS ANGELES GAS AND ELECTRIC CORPORATION (a Corporation) et al., Respondents.

Porter C. Blackburn and Marion P. Betty for Appellant.

Paul Overton, S. W. Guthrie and Neil G. Locke for Respondents.

SHENK, J.—This is an appeal from a judgment of nonsuit in an action for damages for malicious prosecution.

The plaintiff was engaged in the real estate business and also conducted an automobile parking station near Tenth and Hill Streets in the city of Los Angeles. In 1926 he sold the lot on which he was residing with his wife and daughter with the privilege of moving the house to another location. The house was moved to 1634–62nd Street. During the moving and thereafter the plaintiff with his family continued to live in the house. After the house was moved and on June 1, 1926, he made a written application to the defendant to connect the gas service pipes with the gas range and water heater in the house. After waiting a few days he called the office of the defendant company to inquire why the gas-pipes had not been connected up and was informed that the defendant had not been notified by the city plumbing inspector that the service pipes were free from leaks, which was a condition precedent, under a city ordinance, to the right of the defendant to install a meter and connect up the service. Several days intervened before the plaintiff again called the gas company with a like inquiry and was informed that the connection could not be made until the approval of the city inspector had been received. It was the custom of the city inspector to submit daily sheets to the gas company approving gas connections at various locations. On June 11, 1926, the city plumbing inspector tested the gas-pipes at the plaintiff's location and found the same in satisfactory condition but for some reason not disclosed by the record the approval of the plaintiff's connection was not included in the city's reports. On July 3d the plaintiff left with his family for Catalina Island and returned to his home on July 15, 1926, at which time he tested the gas stove and water heater and found the same supplied with gas. He did not again communicate with the defendant company and received no gas bills for the months of July and August. He had been a customer of the gas company for many years.

On September 15th the defendant Ellenson, an employee of the defendant company, whose business it was to investigate the use of gas in violation of law, received information of the condition of the gas connection at the plaintiff's home. Upon inspection thereof he found a piece of three-quarter inch garden hose connected at one end with the service pipe and at the other end with the house line. Both ends

of the garden hose had a one-half inch nipple with bushings. Pieces of galvanized wire were tied around the nipples to keep the gas from leaking out of the hose. The defendant Ellenson testified that he then proceeded to the defendant company's office and found that the plaintiff had filed the application for the gas connection on June 1, 1926, and that no approval had been received from the city to make the connection. He then proceeded to the office of the city prosecutor and after laying the facts before a deputy in that office signed a complaint prepared by the deputy charging the plaintiff with a violation of section 498 of the Penal Code, a misdemeanor. A warrant was issued on the filing of the complaint and Ellenson proceeded with two police officers to the location of the plaintiff's auto park business. Ellenson had never seen the plaintiff before but had theretofore ascertained his whereabouts from Mrs. McAfee when he was at the plaintiff's home that morning. The warrant of arrest was served by a police officer on the plaintiff at his place of business and he was taken to the police station. The bail had been fixed at $500. When the plaintiff was ''booked'' it was too late for him to obtain the money from the bank and he was detained at the jail over night. The next morning the plaintiff procured a reduction of the bail to $100, which was provided, and he was released about 1 o'clock in the afternoon of the 16th.

A plea of not guilty was entered and a jury was demanded. Upon a trial of the misdemeanor action the jury returned a verdict of not guilty on September 30, 1926, and the present action was commenced on September 14, 1927.

There was no substantial dispute as to the foregoing facts. The trial court concluded that there was not a sufficient showing of want of probable cause and granted the motion for a nonsuit at the close of the plaintiff's case in chief.

The following propositions are well established in the law of malicious prosecution: ''Public policy and public security alike require that prosecutors should be protected by the law from civil liabilities, except in those cases where the two elements of malice in the prosecution, and want of probable cause for the prosecution, both concur. ██ Though malice be proved, yet if there was probable cause, the action must fail. ██ Malice may be inferred from want of probable cause, but want of probable cause cannot

be inferred from malice, but must be affirmatively shown by the plaintiff. . . . Where the circumstances are admitted, or clearly proved by uncontroverted testimony, it is the province of the court to determine the question of probable cause, and the court may order a nonsuit.'' (*Potter* v. *Seale*, 8 Cal. 217, 220; see, also, *Redgate* v. *Southern Pac. Co.*, 24 Cal. App. 572 [141 Pac. 1191], and cases therein cited.) ■ Probable cause has reference to the common standard of human judgment and conduct. (*Griswold* v. *Griswold*, 143 Cal. 617, 620 [77 Pac. 672].) It is defined as ''a suspicion founded upon circumstances sufficiently strong to warrant a reasonable man in the belief that the charge is true''. (*Potter* v. *Seale, supra; Burke* v. *Watts*, 188 Cal. 118 [204 Pac. 578]; 16 Cal. Jur., p. 738.)

■ Tested by the foregoing rules the facts above outlined presented a question of law for the court as to whether probable cause for the prosecution existed. It was undisputed that the plaintiff made application for the gas connection on June 1st. The delay in the installation caused him inconvenience and irritation which he frankly admitted. He was the only male member and was in charge and control of the household and premises. The garden hose connection was installed under the house with expertness. He used the gas by this means for two months after this connection was installed without receiving a gas bill or further communicating with the company. These basic and undisputed facts would give rise to the reasonable suspicion that the plaintiff made the garden hose connection or caused the same to be made.

■ The plaintiff, however, seeks to establish a conflict in the evidence which, it is claimed, should have been resolved only by the jury. This contention is predicated on the following condition of the record. On the trial of the present action the defendant Ellenson testified that after he saw the condition of the gas connection he went to the office of his employer, the gas company, and made an investigation as to whether the plaintiff had applied for gas on the premises and found that such application had been made. He was then confronted with the transcript of his testimony on the trial of the criminal action in which he stated that when he swore to the criminal complaint he did not know that the application for the gas connection had been made by the plaintiff.

We cannot conclude that this state of the record created a material conflict. It is obvious that it is immaterial in a prosecution under section 498 of the Penal Code whether an application for a gas connection had or had not been made. It is also asserted that a conflict was presented as to whether Ellenson informed the deputy city prosecutor that there was a gas meter under the house. Ellenson first testified that he did so inform the deputy. Upon further questioning he stated that he did not remember whether he did or not. Assuming that a conflict in the evidence was thereby presented, it was likewise on an immaterial point.

■ Finally it is contended that the charge laid in this complaint and verified by the defendant Ellenson contained a false statement of fact and therefore that the prosecution was malicious and without probable cause. Section 498 of the Penal Code provides: "Every person who shall wilfully, with the intent to injure or defraud, make or cause to be made, or uses or caused to be used, any pipes, tube, or other instrument or conduit in connection with any main, sewer pipe or other pipe or conduit owned or controlled by any other person for conducting or supplying illuminating or fuel gas in such manner as to supply such or any illuminating or fuel gas to any burner, or outlet by or at which illuminating or fuel gas is consumed or otherwise used or wasted without passing through any meter provided for the measuring or registering the quantity of gas passing through such pipes, meters or other conduits, or wilfully acts in any other manner so as to evade or cause the evasion of payment therefor . . . is guilty of a misdemeanor."

The misdemeanor complaint charged the offense in the language of the statute and averred that the garden hose connection was made "so that the gas did not pass through the meter provided and installed by" the defendant company. It appears without dispute that no meter had been installed by the company. It is argued by the plaintiff that such an allegation was essential to state a cause of action under the code section; that the defendant Ellenson knew that the meter had not been installed; that the commencement of the prosecution with such knowledge was malicious, and without probable cause. We do not deem the presence of a meter on the premises essential to an offense under the statute, nor an allegation of its presence

necessary to the statement of a cause of action thereunder. The essence of the offense is the use of gas by any contrivance and under the circumstances denounced by the statute in such manner as to supply such gas "without passing through any meter provided for the measuring and registering the quantity of gas" so used. It is not and may not be contended that the statute is invalid or that the complaint sworn to by the defendant Ellenson does not state a public offense thereunder. The allegation included therein and complained of may be treated as surplusage and its presence in nowise prejudiced the rights of the plaintiff.

■ Furthermore, the evidence in support of the allegation of malice is not sufficient to support the prosecution of the present action. The allegation is directed to the actions of the defendant Ellenson in showing the piece of connecting hose to the plaintiff after the latter's arrest and on the way to the police station in an automobile and stating to him, "That is what you are getting your ride for". Ellenson did not know and had never seen the plaintiff prior to the arrest, and appears to have been discharging his duty to his employer impersonally.

The plaintiff naturally complains of the indignity of being placed under arrest and of his treatment at the police station, in being confined overnight with persons of disreputable character and in quarters and under conditions not to the liking of anyone whether he be guilty or innocent, but the defendants were in no way responsible for such quarters or conditions and the plaintiff may not hold them responsible for the inconvenience and discomfort suffered by him except upon the proof of the essential elements in an action of this nature.

The judgment is affirmed.

Seawell, J., Preston, J., Curtis, J., and Waste, C. J., concurred.