[Civ. No. 4528.   Third Appellate District.—November 30, 1932.]

HARRY T. MOORE, Appellant, v. A. J. DURRER, Respondent.

J. Oscar Goldstein for Appellant.

C. C. McDonald for Respondent.

THOMPSON (R. L.), J.—This is an appeal from a judgment which was rendered against the plaintiff pursuant to a directed verdict in an action for malicious prosecution. The sole question is whether the record contains substantial evidence of probable cause justifying the defendant in instituting a civil suit for damages against plaintiff in which he was charged with arson.

The plaintiff is a brother-in-law of the defendant. Plaintiff resides with his family near Beegum Peak in a sparsely settled portion of Tehama County. Within two or three miles of this home the defendant owned a summer cottage valued at $3,000. He resided at Rosewood some distance away. He was engaged in the cattle business. Considerable enmity existed between the plaintiff and defendant. Frank Ball is a stockman and a neighbor who resides in the vicinity of Beegum Peak. He had known both the plaintiff and the defendant for twelve years, and was on friendly terms with them.

On the evening of July 5, 1929, Ball was riding along a trail near the Durrer ranch in search of cattle. He passed the Durrer cottage situated at Old Man's Spring and observed that the house was standing intact. It was then unoccupied. He rode that way again at 9 o'clock the following morning and discovered that in the meantime the dwelling-house had been completely destroyed by fire. The ruins contained live coals and were still smoking. The gate leading into the premises was open. In closing this gate Mr. Ball saw the tracks of a man whose feet appeared to have been covered with burlap to conceal their identity. He immediately rode to Rosewood and informed Durrer of the destruction of his house, and the presence of the foot tracks. Durrer was then engaged in driving a band of cattle down to Cottonwood. The date of the occurrence of the fire was definitely fixed as the night of July 5th by recalling that it was the occasion of the birthday of Tony Durrer. The respondent was too busy to personally make an immediate investigation. He asked Roy Owen, a friend who was passing in an automobile, to inform the sheriff at Red Bluff of the fire and send out a representative of that office to investigate the affair. He also sent to the scene of the fire his son Tony Durrer and Tom Tye, an Indian helper about the stock ranch, whom he described as "the best tracker in the bunch".

The deputy sheriff, Walter Williams, Tony Durrer and the Indian, Tom Tye, met at the Durrer premises near Old Man's Spring on the evening of July 6th. The following morning these three men made a careful investigation. The footprints of a man whose shoes had been covered with burlap were plainly discernible about the ruins of the

cottage and along a trail a distance of 250 yards to the open gate, thence up Coyote Gulch trail to a bunch of redbud bushes, to which it was evident a horse had been recently tied. About this clump of bushes there were many fresh tracks of a barefoot horse with inturned hoofs. The numerous hoof tracks in that vicinity indicated that a horse had stamped about the redbud bushes for some length of time. Near these bushes a bare spot was seen on the ground where some individual had evidently sat to adjust the burlap over his feet. Burlap cords were found at this place. From the clump of redbud bushes a trail of these tracks of a barefoot horse with pigeon-toed hoofs led up the gulch through Dry Lake directly to the corral on the premises of Moore. Similar tracks were observed in the corral. These same tracks also led down the trail from the Moore place to the clump of redbud bushes. Several threads of burlap were discovered clinging to the thorns of bushes along this trail adjacent to the pathway about the height above the ground of the stirrups of a horseback rider.

On July 10th, DeWitt Nelson, supervisor of the Trinity National Forest Reserve, at the request of Mr. Strickland, a state forest inspector, accompanied Walter Williams, the deputy sheriff, to interview the appellant Moore, and to procure plaster-cast molds of the hoof tracks in question. They met Mr. Moore at his home. He was told of the fire and of the tracks which they found about the ruins of the Durrer home. They also informed him of their discovery of the tracks of a pigeon-toed barefoot horse from the redbud bushes both to and from the Moore corral. Mr. Nelson testified that Moore denied burning the building. He admitted the existence of enmity between himself and the respondent. He also admitted that he owned a pigeon-toed mare, but asserted that he had shod the horse on July 6th. That would be the morning after the fire occurred. Subsequently Moore claimed to have shod the mare on July 5th. In the conversation with Nelson and the deputy sheriff, Moore said: ''That looks pretty bad for Mr. Moore, doesn't it?'' To this admission they agreed. In response to a question regarding Mr. Moore's appearance at the time these incriminating circumstances were related to him, Mr. Nelson said that he looked ''like anyone would (who is) guilty of anything or (who is) being accused. He became

very nervous in his facial and neck muscles, twitched very badly. Q. Did he appear to be guilty to you at the time, from his actions? A. Yes." This evidence was corroborated by Mr. Williams.

The foregoing facts were related to the respondent during the progress of the investigation. He twice visited the office of the district attorney Fred C. Pugh, demanding a warrant for the arrest of Moore on a charge of arson. The district attorney refused to permit the issuing of a warrant, saying that the facts were insufficient to assure a conviction of the alleged crime. Mr. Durrer then consulted two lawyers, relating to each of them the foregoing facts. Both lawyers advised him that he had a good cause of action against the appellant for damages for burning the building. The respondent then returned to the district attorney and told him what his lawyers had said regarding the merits of a civil suit for damages. The district attorney did not advise him there was an absence of probable cause to believe that Moore was guilty of the crime. He rather encouraged him to begin the civil suit for damages. He told Durrer that his attorney, "Mr. Matlock was a very capable lawyer and ought to know what he was doing, and to follow Mr. Matlock's advice." The respondent subsequently instituted the suit for damages against the appellant. The material allegations of that complaint were denied. The suit was tried with a jury and a verdict was rendered in favor of Moore. The following May this suit for damages for malicious prosecution was commenced. At the close of the case, a motion for a directed verdict was granted. From the judgment which was accordingly entered this appeal was perfected.

The appellant contends the record discloses a conflict of evidence regarding the existence of probable cause for the respondent to have believed that Moore was guilty of the alleged crime of arson, and that the cause should therefore have been submitted to the jury on its merits.

We are of the opinion there is an abundance of evidence, without substantial conflict, to justify a reasonable person in assuming there was probable cause to believe the appellant burned the respondent's building. The appellant admitted his enmity toward the respondent. He said that he had offered to "shoot it out with him". The property

was located in a sparsely settled district. The cottage was unoccupied. It was burned in the night-time. Tracks of a man's feet covered with burlap to disguise his identity were found about the ruins of the house. These tracks led to a bunch of bushes some distance away, where a barefoot, pigeon-toed horse had been recently tied. The fresh tracks of this horse led along a trail both to and from the very house of the appellant. Shreds from burlap were found clinging to the thorns of bushes adjacent to the trail. The appellant owned a pigeon-toed mare which he took the precaution to shoe just about the time of the fire. Two witnesses testified that Moore admitted he shod the horse on July 6th, which was the day after the fire. He later insisted that he shod the mare on the fifth day of July. It was the evening of that very day when the fire occurred. Officers and disinterested persons made a thorough investigation of the circumstances and assured the respondent of their belief in Moore's guilt. When he was confronted with these incriminating facts, the appellant denied his guilt, but admitted that it looked pretty bad for him. These circumstances were related to two lawyers, each of whom advised the respondent that he had a meritorious cause of action for damages against the appellant for burning the building. Certainly these facts furnish strong evidence of probable cause to believe that the appellant committed the crime. Moreover, the burden was on the appellant to prove, not only that the respondent prosecuted the action with malice toward him, but also that the respondent did so without probable cause to believe in the guilt of the appellant.

In a suit for malicious prosecution the burden is on the plaintiff to prove both lack of probable cause and malice. (*Lee* v. *Levison,* 173 Cal. 166 [159 Pac. 438; *Randleman* v. *Boeres,* 93 Cal. App. 745, 752 [270 Pac. 374].) While malice may be inferred from a lack of probable cause, the want of probable cause may not be inferred from the mere existence of malice. (*McKenna* v. *Heinlen,* 128 Cal. 97 [60 Pac. 668]; *Vernon* v. *Plumas Lumber Co.,* 71 Cal. App. 112, 126 [234 Pac. 869]; *Burke* v. *Watts,* 188 Cal. 118 [204 Pac. 578]; *Randleman* v. *Boeres, supra.*) Assuming that the respondent's enmity against the appellant in the present case furnishes some evidence of malice

on his part, that fact alone does not entitle the cause to be submitted to the jury, because the burden was also on the appellant to further prove that the previous action was commenced without probable cause. (*Potter* v. *Seale,* 8 Cal. 217.) Both of these essential elements must be established by the appellant to entitle the cause to be submitted to the jury. One may have malice toward another and still possess facts or information sufficient to justify him in assuming there is probable cause to believe the object of his enmity is guilty of a crime.

█ The fact that the respondent failed in his original action to recover judgment against the appellant does not create a conflict of evidence regarding the existence of probable cause. In the case of *McKenna* v. *Heinlen,* 128 Cal. 97 [60 Pac. 668, 669], it is said in that regard:

"The testimony is slight, and is substantially without conflict. Plaintiff introduced the pleadings and final judgment in the original action brought by defendant John Heinlen. These documents established the fact of final judgment only, and no inference is to be drawn from the failure of defendant in that action that he had not probable cause to bring it."

Probable cause does not depend upon the possession of facts which satisfactorily prove the guilt of an accused person. It is adequate proof of the existence of probable cause that one is possessed of information or facts which are sufficient to cause a reasonable person to honestly believe the charge is true. (*Smith* v. *Liverpool & London & Globe Ins. Co.,* 107 Cal. 432 [40 Pac. 540]; *Booraem* v. *Potter Hotel Co.,* 154 Cal. 99 [97 Pac. 65].) In the case of *McAfee* v. *Los Angeles Gas & Elec. Corp.,* 215 Cal. 219 [9 Pac. (2d) 212], it is said:

" 'Where the circumstances are admitted, or clearly proved by uncontroverted testimony, it is the province of the court to determine the question of probable cause, and the court may order a non-suit.' (*Potter* v. *Seale,* 8 Cal. 217, 220; see, also, *Redgate* v. *Southern Pac. Co.,* 24 Cal. App. 573 [141 Pac. 1191], and cases therein cited.) Probable cause has reference to the common standard of human judgment and conduct. (*Griswold* v. *Griswold,* 143 Cal. 617, 620 [77 Pac. 672].) It is defined as 'a suspicion founded upon circumstances sufficiently strong to warrant

a reasonable man in the belief that the charge is true'. (*Potter* v. *Seale, supra; Burke* v. *Watts*, 188 Cal. 118 [204 Pac. 578]; 16 Cal. Jur., p. 738.)''

In the present case there is but a single circumstance which even tends to create a conflict regarding the existence of a lack of probable cause on the part of the respondent. That circumstance does not furnish substantial evidence which creates a conflict. It is the fact that the appellant finally contended that he shod his horse on the fifth day of July, which is the very day the fire occurred. If this were true, the horse might still have been shod on the night of July 5th after the fire was started. Moreover, there is no evidence the appellant's claim that he shod his horse on July 5th was conveyed to the respondent. Both Williams and Nelson told the respondent that Moore admitted to them that he shod his horse on July 6th. It would not be unreasonable to assume that the appellant shod his horse immediately after setting the fire as a deliberate effort to manufacture a defense in the event that he should be charged with the crime. This circumstance upon which the appellant relies is too remote and unconnected to furnish a conflict of evidence which required the cause to be submitted to the jury on its merits.

The appellant insists that a colloquy which occurred between the respondent and Brophy regarding the arrest of Moore furnishes some evidence of a lack of probable cause. We think not. Brophy, who was called as a witness for the appellant, testified that Durrer told him he thought Moore burned his building and that he proposed to have him arrested. Brophy says that he told Durrer: ''I would hardly believe Moore burned the house. . . . I would knock it out with him.'' To this suggestion the respondent replied, ''Moore won't fight.'' Brophy further testified that he met Durrer after the civil suit was commenced and told him, ''He (Moore) will beat you, I think,'' to which the respondent replied, ''Well, the lawyers have got to have a little money anyhow.'' This furnishes no evidence of a lack of probable cause. It indicates no lack of good faith. Brophy was not a lawyer. He was a mere layman. He admits that Durrer told him he believed Moore burned his house and that he was going to prosecute him. This is a positive statement of an absolute conviction

of Moore's guilt. A reasonable construction of Brophy's suggestion to ''knock it out with him'', carries the inference that Brophy must have also thought he was guilty. One would not be likely to advise a man to commit bodily violence upon an innocent person. The answers of Durrer to the effect that Moore would not fight, and that the lawyers must have some money anyhow, are mere facetious replies which do not detract from his former positive assertion that he believed Moore burned his building. The replies above quoted merely indicate that Durrer rejected the suggestions of Brophy as unworthy of consideration.

The appellant contends that the advice of respondent's attorney to the effect that Durrer had a meritorious cause of action against Moore furnishes no evidence of probable cause because respondent failed to inform his lawyer that the district attorney had previously refused to permit the issuance of a warrant of arrest on the charge of arson. The refusal to prosecute a criminal action against Moore is immaterial in determining the merits of a civil suit for damages arising from the charge of arson. To create a valid defense to a suit for malicious prosecution on the ground of reliance upon the advice of counsel, it is necessary to fairly and fully relate to the lawyer all the facts affecting the guilt or innocence of the accused person. The mere opinion of some other attorney, regarding the guilt of the accused, is not material. It is not a question of the actual guilt of the accused person, but merely an inquiry as to whether there was reasonable cause to believe him to be guilty. Certainly it is not necessary to include in the statement of facts the refusal of a district attorney to prosecute a criminal action. The conviction of a crime requires proof of guilt *beyond a reasonable doubt*. A district attorney may be convinced of the guilt of an accused person and yet refuse to prosecute him because he fears that he would be unable to supply evidence which would satisfy the jury of his guilt beyond a reasonable doubt. A civil suit for damages for burning a building depends upon a mere preponderance of evidence. The district attorney advised the respondent in this case to rely upon the advice of his lawyer. This indicates that he thought the facts furnished sufficient evidence to support a judgment in a civil suit for damages. At least this failure to inform

his attorney of the refusal to prosecute the criminal action furnishes no evidence of a lack of probable cause. It was not necessary that Durrer should believe that he could prove Moore's guilt beyond a reasonable doubt. It is only necessary that he honestly believed that he maliciously burned the building.

Where there is a substantial conflict of evidence regarding the necessary element of probable cause, the facts should be submitted to the jury for its determination. It is the sole province of the trial court, however, to determine as a matter of law, when the record is substantially uncontradicted, whether the facts do or do not establish a lack of probable cause. (*Booraem* v. *Potter Hotel Co.*, 154 Cal. 99 [97 Pac. 65].) If the plaintiff in a suit for malicious prosecution fails to sustain the burden of proving that the former action was commenced without probable cause to believe the truth of the charge therein contained, a motion for a directed verdict may properly be granted. In the present case there is an utter failure to prove a lack of probable cause. Upon the contrary, the record is convincing that the respondent did have probable cause to believe and honestly thought the appellant had maliciously burned his dwelling-house.

The judgment is affirmed.

Pullen, P. J., and Plummer, J., concurred.