[Civ. No. 17278.   First Dist., Div. One.   July 10, 1957.]

ALEXANDRINE VERDIER et al., Appellants, v. PAUL VERDIER et al., Respondents.

*Assigned by Chairman of Judicial Council.

William A. Sullivan for Appellants.

Alfred B. Breslauer, Paul C. Dana and Morgan J. Doyle for Respondents.

WOOD (Fred B.), J.—Plaintiffs Mrs. Verdier and Elise Leisner appeal from a judgment of nonsuit in this action for malicious prosecution brought against Mr. Verdier, Verna Osborne and Morgan Doyle. Doyle had sworn to a complaint against plaintiffs and two other persons,[1] charging a violation of section 415 of the Penal Code. Upon the trial of those charges all four were acquitted.

The principal question is whether there was evidence that should have gone to the jury on the question whether the misdemeanor action was prosecuted without probable cause.

Mr. and Mrs. Verdier owned a house in San Francisco.[2] They had held it as joint tenants since July, 1938, and she knew she had a half interest in it. She had not lived in it since 1920 or 1921. They separated in 1939 and have been living separate and apart, though not divorced, ever since. From the time of their marriage (1918) until December 3, 1951, the day of her arrest, he handled and managed this property. During that period she left it up to him to handle the property. She took no active part in it.

---

[1] William Thorpe and William Mardorf, originally named as plaintiffs in the present action but omitted at or prior to the filing of the fifth amended complaint.

[2] The evidence here summarized is based upon the testimony of one or both of the appellants or upon stipulations, unless otherwise indicated.

Beginning in 1947, Miss Osborne occupied this house by consent of Mr. Verdier and still occupied it with his consent at the time of the events here involved. Early in 1948 Mrs. Verdier learned that Miss Osborne was there under Mr. Verdier's authority.

On October 18, 1951, Mrs. Verdier signed and caused to be mailed a notice to Miss Osborne to immediately quit her occupancy and deliver possession of the house to Mrs. Verdier. On October 26, 1951, she signed a like notice and caused it to be posted on the front door of the house. On October 30, 1951, she filed a complaint in unlawful detainer, seeking to oust Miss Osborne and obtain possession of the premises for her own exclusive use.

On December 3, 1951, at about 2 p.m., Mrs. Verdier with Miss Leisner, an investigator, and Mr. Mardorf and Mr. Thorpe, detectives, went to the house for the purpose of taking possession. Mrs. Verdier and Miss Leisner planned to stay all night. Miss Osborne was out at the time. The house boy was there. Mrs. Verdier told him who she was and that she wanted to take possession. He, a very gentle person, did not make any objection. So they went in. The detectives caused the locks on the front door to be changed. Several persons called saying they were Miss Osborne's music students, and then went away. Mrs. Verdier told one lady with two young girls that this house belonged to her and her husband in joint tenancy and that she was going to occupy it. Miss Osborne returned about 4:30 p.m. and went upstairs. She talked to Mr. Thorpe who said he was in charge. He told her to get her things and get out.

On two occasions when Miss Osborne used the telephone in her apartment upstairs Mr. Mardorf listened in upon an extension on a lower floor. Upon one occasion he told his confederates, "She's talking to Mr. Doyle now and telling Mr. Doyle that Madame Verdier is here with two men and another woman."

Thorpe wanted to find out if Miss Osborne had a lease. So, Mardorf and Miss Leisner went upstairs. Finding the door to the apartment locked, Mardorf pounded on it, saying "Hey, Osborne, come on, get that lease out." She responded, "Leave me alone" and started screaming. According to Leisner, "He hit the door pretty hard and the shovel [barricade] fell down on the other side and went 'kerplunk,' " perhaps hitting one of Miss Osborne's dogs. Osborne screamed.

The four remained until about 10 o'clock p.m. when they were arrested.

Here we learn from plaintiffs' testimony and stipulations that they did commit the offense charged.

■ A cotenant has no right to oust a person who holds possession with the consent of another tenant in common (*Lee Chuck* v. *Quon Wo Chong & Co.*, 91 Cal. 593 [28 P. 44]).

■ When a joint tenant leases to a third party he confers upon the latter the same right of possession that he himself has. (*Swartzbaugh* v. *Sampson*, 11 Cal.App.2d 451 [54 P.2d 73].) In the Lee Chuck case and again in the Schwartzbaugh case the court quoted with approval from section 253 of Freeman on Cotenancy and Partition, which reads in part as follows: "By either lease or license, a joint-tenant, co-parcener, or tenant in common, may confer upon another person the right to occupy and use the property of the co-tenancy as fully as such lessor or licenser himself might have used or occupied it if such lease or license had not been granted. If either cotenant expel such licensee or lessee, he is guilty of trespass." In *Waterford Irr. Dist.* v. *Turlock Irr. Dist.*, 50 Cal.App. 213, 217 [194 P. 757], the court said: "One tenant in common may by either lease or license confer upon another person the right to occupy and use the property of the cotenancy as fully as such lessor or licensor himself have used or occupied it, if such lease or license had not been granted." (See also 13 Cal.Jur.2d 318, Cotenancy, § 32.)

■ Accordingly, when Mrs. Verdier entered and took possession with the intention of remaining and of ousting Miss Osborne, she exceeded any rights she may have had jointly to occupy the premises with Mr. Verdier or his licensee. Such conduct, coupled with the changing of the locks on the front door and the pounding on the door to the upper apartment, and other acts which we have narrated, constituted wilful disturbance of the peace of a person by offensive conduct, expressly proscribed by section 415 of the Penal Code. (See *People* v. *Vaughan*, 65 Cal.App.2d Supp. 844 [150 P.2d 964].)

■ This proof that plaintiffs did commit the offense charged in the criminal action[3] shows the existence of probable cause and is a complete defense to this action. (Prosser on

---

[3] Acquittal of the criminal charge, in the criminal action, did not create a conflict of evidence on the issue of probable cause. (*Sebastian* v. *Crowley*, 38 Cal.App.2d 194, 202-203 [101 P.2d 120]; *Jensen* v. *Leonard*, 82 Cal.App.2d 340, 351 [186 P.2d 206]; *Centers* v. *Dollar Markets*, 99 Cal.App.2d 534, 541 [222 P.2d 136]; *Moore* v. *Durrer*, 127 Cal. App. 759, 765 [16 P.2d 676].)

Torts, 2d ed., pp. 651-652, and authorities cited in notes 72, 77 and 79; 34 Am.Jur. 788-789, Malicious Prosecution, § 147, and authorities cited in notes 2 and 3.) Although no California decision precisely in point has come to our attention, the rationale of the court's opinion in *Sears* v. *Hathaway*, 12 Cal. 277, and in *Sandoval* v. *Southern Calif. Enterprises, Inc.*, 98 Cal.App.2d 240, 253-254 [219 P.2d 928], persuades us that it is the law in this state.

█ We need not rest our decision solely on this point. The uncontroverted evidence shows that Mr. Doyle had probable cause to believe that the offense charged was being committed. He testified that he knew that Mrs. Verdier was a joint tenant, that she had at most equal right of possession with her husband or any person holding under him if she had not waived that right, that Mr. Verdier handled the property and she expected and wanted him to do so. Miss Osborne phoned him that when she returned to the house she found a man changing the lock on the front door. She found a number of people inside and was advised by one of them that Mrs. Verdier was taking over this place and that "she is in and you are out, and get out or we will throw you out," or words to that effect. Later Miss Osborne phoned that some papers had been served on her. (They turned out to be the papers in the unlawful detainer suit.) Still later she advised him that this group had come up and broken down a door that led to her private quarters, broken the lock and broken the door open, and that they were having a big time downstairs. Doyle himself, over the telephone, heard the noise, the music and singing or shouting or loud talking accompanying it, instrumental music and loud voices. This information which Miss Osborne gave him, coupled with his knowledge of the joint tenancy, Miss Osborne's permissive occupancy, and Mrs. Verdier's lack of a right to exclusive possession, he believed and acted upon. Here is abundant evidence, without conflict, to justify a reasonable person, situate as Mr. Doyle was, in assuming there was probable cause to believe that the plaintiffs had violated section 415 of the Penal Code. This record closely parallels that in *Jensen* v. *Leonard*, 82 Cal.App.2d 340 [186 P.2d 206], in respect to which the court reached a like conclusion concerning defendant Leonard (pp. 352-353).

█ Where, as here, there is no conflict in the evidence that bears upon the issue of want of probable cause, the trial court must "determine, as a matter of law, whether such undisputed

354

facts do, or do not warrant an inference of want of probable cause. If there is no evidence whatever from which the jury might have inferred that the defendants did not in fact believe that a crime has been committed and that plaintiff had committed it, the question of defendants' belief is to be determined by the court on the basis of what, under the circumstances, was sufficient to cause a reasonable man to entertain a suspicion that the crime had been committed and that plaintiff had committed it." (*Centers* v. *Dollar Markets*, 99 Cal. App.2d 534, 541 [222 P.2d 136]. See also *McAfee* v. *Los Angeles Gas etc. Corp.*, 215 Cal. 219, 222-223 [9 P.2d 212].) That is this case. There is no basis for disturbing the implied finding the trial judge made when he granted the motion for nonsuit.

As concerns Mr. Verdier, there is no evidence indicating that he took an active part in the prosecution. He was in France at the time of the events in suit. He knew nothing about the entry, or of plaintiffs' conduct on the premises, until some time after their arrest. Our attention has been called to no evidence that he took an active part in instigating or in carrying on the prosecution.

Nor did Miss Osborne take part in instigating the prosecution. She merely reported to her attorney the facts as she saw them, leaving to him the selection of a remedy. We see no basis for imputing to her the acts he performed when he instigated the prosecution. If she were chargeable with his conduct in that regard she should have the benefit of his defense of probable cause to believe that plaintiffs committed the offense charged.

In view of the failure of proof of want of probable cause the nonsuit must be affirmed. There is, therefore, no need to consider whether plaintiffs met their burden of proving the other elements of their alleged cause of action, including the question of malice. "Though malice be proved, yet if there was probable cause, the action must fail. Malice may be inferred from want of probable cause, but want of probable cause cannot be inferred from malice, but must be affirmatively shown by the plaintiff. . . ." (*McAfee* v. *Los Angeles Gas etc. Corp., supra*, 215 Cal. 219, 222-223.)

Plaintiffs assert error in the sustaining of objections to evidence they sought to elicit designed to show a meretricious relationship between defendants Osborne and Verdier. We do not see that such proof, if it exists, would be relevant to

any of the issues in this case. They say it bears upon malice harbored by defendants Osborne and Verdier toward the plaintiffs. The connection is so remote as to be speculative. Moreover, the element of malice has lost its significance as an issue as a result of plaintiffs' failure to prove want of probable cause.

Finally, plaintiffs claim that defendants' cost bill was filed too late. They are mistaken. It was filed on the very day that the formal written decree signed by the judge was filed. True, there was a minute order granting the motion for nonsuit, made some 24 days earlier. That order was not final. In addition to granting defendants' motion for nonsuit, it took under submission all issues presented by Osborne's cross-complaint. We do not infer that the judge who made that order intended to render two judgments. We infer he did not intend any part of that order to operate as a final judgment.

The judgment is affirmed.

Peters, P. J., and Bray, J., concurred.

A petition for a rehearing was denied August 9, 1957, and appellants' petition for a hearing by the Supreme Court was denied September 4, 1957.