Filed 3/5/24  Campana v. Saldana CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| WILLIAM CAMPANA, <br><br> Plaintiff, Cross-defendant and Respondent, <br><br> v. <br><br> CONSUELO SALDANA et al., <br><br> Defendants, Cross-complainants and Appellants. | B327132 <br><br> Los Angeles County Super. Ct. No. BC668542 |

APPEAL from a judgment of the Superior Court of Los Angeles County, Christopher K. Lui, Judge.  Affirmed.

Law Offices of Dennis G. Geselowitz and Dennis G. Geselowitz for Defendants, Cross-complainants and Appellants.

Law Offices of Steve Lopez and Steve Lopez for Plaintiff, Cross-defendant and Respondent.

———————————

Consuelo Saldana and Mario Campana jointly purchased a condominium in 1987. More than two decades later, Mario transferred his interest in the condominium to his son, William Campana. Around the same time, Consuelo transferred her interest to her daughter, Iva Dominguez, and her daughter's husband, Miguel Dominguez.[1] Iva is Mario's daughter and William's half-sister.

In 2017, William filed a complaint against Consuelo, Iva, and Miguel (Appellants), seeking to quiet title and partition the property. Appellants filed a cross-complaint against William for quiet title. After a bench trial, the court entered judgment for William and ordered the property be sold. On appeal, Appellants argue they were entitled to a jury trial, the court ignored their evidence, the court entered judgment on a "sham" complaint, and the court erroneously ordered the property be sold. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *The complaint*

In July 2017, William filed a complaint against Appellants asserting causes of action for partition of real property, accounting, partnership dissolution, constructive trust, common count, and breach of fiduciary duty. Among other forms of relief, William sought partition by sale, an accounting, compensatory and punitive damages, and dissolution of partnership.

The complaint alleged that in 1993, William's father, Mario Campana, bought a condominium (the Property) with Consuelo Saldana "as an investment and under a verbal partnership agreement." The partnership agreement allowed

---

[1] For the sake of clarity, we refer to the parties by their first names.

2

either party to call for the sale of the Property. In July 2013, Mario transferred his interest in the Property to William. A few months later, Consuelo transferred her interest to her daughter, Iva, and her daughter's husband, Miguel. About three years later, William learned Appellants had not paid the property taxes or homeowners association fees. William told Appellants he wanted to sell the Property or have them purchase his interest, but they did not respond to his request.

After litigating the case for a couple of years, William moved for leave to file an amended complaint to clarify his partition cause of action, add a new cause of action for quiet title against Consuelo, and remove all other causes of action. As to the partition claim, William asserted Mario and Consuelo had refinanced the Property in 1993, which he mistook for the original purchase. In fact, they had purchased the Property in 1987. Because of this error, William sought to amend the complaint to change the purchase date from 1993 to 1987. Appellants opposed the motion, arguing the proposed amendments were barred under the sham pleading doctrine because they contradicted the allegations in the original complaint.

The court granted William leave to add a quiet title cause of action, but it denied the motion in all other respects. The court concluded the sham pleading doctrine precluded William from amending his allegations regarding the purchase date. The court noted it could not determine whether William's mistake about the purchase date was reasonable because he failed to produce a copy of the refinance agreement. As to William's request to remove causes of action, the court stated it was unnecessary

3

because William could simply file a request for dismissal of any claims he no longer wished to pursue.

William filed an amended complaint that included all his prior claims plus a new claim for quiet title against Consuelo. The quiet title claim alleged Consuelo continued to claim an interest in the Property, despite having transferred her entire interest to Iva and Miguel. In relief, William sought a declaration that only he, Iva, and Miguel had an interest in the Property. After filing the amended complaint, William dismissed all his claims except those for partition and quiet title.

## 2. *The cross-complaint*

In April 2020, Appellants filed a cross-complaint against William, asserting a single cause of action for quiet title. Confusingly, the cross-complaint also included separate sections entitled "breach of contract founded upon written instrument," "adverse possession," "fraud," and "constructive trust." In relief, Appellants sought an order compelling William to transfer his legal title to Appellants, a judgment enjoining William from claiming any right to the Property, and a declaration that Appellants had the sole legal and equitable rights to the Property.

Appellants' cross-complaint alleged that Iva is Mario and Consuelo's daughter from an affair they had while Mario was married to another woman. In 1987—when Iva was 16 years old—Mario agreed to help Consuelo buy the Property in lieu of providing past and future financial support. Mario and Consuelo were both named on the title to the Property. However, Consuelo owned the entire beneficial interest and Mario held his interest in trust for her. Mario agreed to transfer his interest to Consuelo once she paid off the mortgage. He also agreed the entire

4

Property would eventually pass to Iva. Consuelo used the Property as her primary residence, and she paid off the mortgage in 1993. However, Mario refused to transfer title to her.

### 3. *The trial*

The parties tried their claims to the court over the course of six days. Iva testified her parents purchased the Property in 1987 for $68,000, with a $20,000 down payment. They paid off the original loan in 1993 and took out a second loan. Consuelo alone made payments on the loans.

Iva testified Mario repeatedly promised to transfer his interest in the Property to her and Consuelo. Despite those promises, he never signed a transfer deed and would come up with some excuse for why he could not do so. Iva eventually stopped believing Mario would keep his promise to transfer the Property to her.

According to Iva, at some point, she and Consuelo learned that Mario had transferred his interest in the Property to William. After learning of the transfer, Consuelo tried to transfer the entire Property to Iva and Miguel. A clerk told her that was not possible, so Consuelo instead deeded Iva and Miguel a one-half interest.

Iva testified she and Miguel were living on the Property with Consuelo, who was 93 years old and suffering from dementia. Iva said Consuelo continued to claim an ownership interest in the Property, despite having deeded her interest to Iva and Miguel nearly a decade earlier.

William testified his father transferred to him a one-half interest in the Property in July 2013. Mario died about three years later. According to William, Mario said he had entered into a partnership agreement to purchase the Property as an

investment, but he did not disclose his partner's name. Over time, Mario revealed more details about the agreement, including that Consuelo was his partner. Mario claimed he met Consuelo at church, and he wanted to help her out because she was pregnant and had no support. Mario said the agreement was that Consuelo would live in the Property rent free until her child turned 18 years old, and then Mario would exercise his option to sell his share or buy out Consuelo's share.

William testified he could not recall ever having met Consuelo. He met Iva once, at her wedding to Miguel in 2009. However, William could not recall whether his father had told him Iva is his half-sister. William is significantly older than Iva; he graduated from high school the same year she was born.

William explained that, after his father's death, he learned Appellants were claiming an interest in the Property. He also discovered the property taxes had not been paid for several years. William explained he was claiming an ownership interest in the Property under the transfer deed his father signed in 2013, rather than under a partnership agreement. William wanted the Property partitioned, but he did not care whether it was partitioned by appraisal or by sale.

**4. *The judgment***

The trial court apparently issued a statement of decision in William's favor. However, Appellants did not include the statement of decision in the record on appeal. Nor is there any indication in the record that Appellants filed objections to the statement of decision.

The court entered an interlocutory judgment for partition under Code of Civil Procedure section 872.720. The judgment

declares William owns a one-half interest in the Property, and Miguel and Iva each own a one-quarter interest in the Property. The judgment orders the Property be sold, stating, "Under the circumstances, the sale of the property and division of the proceeds would be more equitable than division of the property; the Court, therefore, orders that the property be sold and the proceeds divided among the parties according to their respective interests." The court appointed a referee to sell the Property. The judgment also directs the Clerk of the Court to issue a writ of possession under Code of Civil Procedure section 712.010 if William applies for one.

Appellants timely appealed.

## DISCUSSION

### 1. *We deny Appellants' motions to augment the record*

Appellants filed their opening brief on appeal on September 28, 2023. In their brief, Appellants noted they intended to move to augment the record with certain documents that were missing from it.

Appellants subsequently filed two motions to augment the record on appeal. They filed the first motion on December 6, 2023, which was the week before oral argument. In that motion, Appellants sought to augment the record with six documents: a deposition transcript, the statement of decision, three minute orders related to the statement of decision, and William's proposed statement of decision. In a declaration attached to the motion, Appellants' counsel stated he believed he had designated the documents for inclusion in the record, but he had since learned they had not been included. Counsel represented he is inexperienced in appellate work, as he normally works as a corporate financial officer and in-house counsel.

7

This court held oral argument on December 15, 2023. Nearly a week later—on December 21, 2023—Appellants filed a supplemental motion to augment the record. In their supplemental motion, Appellants sought to include in the record their answer to William's complaint.

Rule 8.155 of the California Rules of Court allows an appellate court to augment the record "[a]t any time, on motion of a party or its own motion . . . ." (Cal. Rules of Court, rule 8.155(a)(1).) Our local rules state an appellant should file a request for augmentation "within 40 days of the filing of the record . . . ." (Ct. App., Second Dist., Local Rules, rule 2(b), Augmentation of record.) Motions filed beyond that date "will not be granted except upon a showing of good cause for the delay." (*Ibid.*)

The record in this case was filed on August 1, 2023, more than 40 days before Appellants filed their first motion to augment. Appellants fail to show good cause for their delay. By their own admission, Appellants were aware the record was incomplete when they filed their opening brief on appeal. They have not provided a compelling explanation as to why they waited more than two months after filing their brief—and until the week before oral argument—to file their first motion to augment. Their counsel's inexperience in appellate practice does not provide a sufficient explanation or excuse for the delay. Accordingly, we deny both motions to augment the record.

## 2. *Appellants were not entitled to a jury trial*

Appellants argue the trial court erred in refusing to conduct a jury trial on the quiet title and partition claims. They contend that, although the claims were equitable in form, each raised issues for which a jury was required.

a.    *The right to a jury trial*

The California Constitution states, "Trial by jury is an inviolate right and shall be secured to all." (Cal. Const., art. I, § 16.) Our state's high court has explained the "right so guaranteed . . . is the right as it existed at common law in 1850, when the Constitution was first adopted, 'and what that right is, is a purely historical question, a fact which is to be ascertained like any other social, political or legal fact.' [Citations.]" (*C & K Engineering Contractors v. Amber Steel Co.* (1978) 23 Cal.3d 1, 8 (*C & K Engineering*).)

Under this historical approach, "as a general matter the California Constitution affords a right to a jury trial in common law actions at law that were triable by a jury in 1850, but not in suits in equity that were not triable by a jury in 1850. [Citation.] In applying this test, . . . the *form* or *title* of a statutory cause of action is not controlling and that if the *substance* of the cause of action is one that would have been triable by a jury at common law, there is a right to a jury trial even if the statute's designation might suggest that it is an equitable proceeding." (*Nationwide Biweekly Administration, Inc. v. Superior Court* (2020) 9 Cal.5th 279, 315.) "On the other hand, if the action is essentially one in equity and the relief sought 'depends upon the application of equitable doctrines,' the parties are not entitled to a jury trial." (*C & K Engineering, supra*, 23 Cal.3d at p. 9.) "[T]he legal or equitable nature of a cause of action ordinarily is determined by the mode of relief to be afforded." (*Raedeke v. Gibraltar Sav. & Loan Assn.* (1974) 10 Cal.3d 665, 672.)

b. *The record does not show Appellants preserved the jury trial issue for appeal*

William suggests the trial court properly refused to conduct a jury trial because Appellants failed to present the court with compelling legal arguments or evidence to show the claims were legal in nature. Although not stated explicitly, we understand William essentially to be making a forfeiture argument.

"It is well-settled that the failure to raise an issue in the trial court typically forfeits on appeal any claim of error based on that issue." (*Howitson v. Evans Hotels, LLC* (2022) 81 Cal.App.5th 475, 489 (*Howitson*).)  " 'An appellate court will not consider procedural defects or erroneous rulings where an objection could have been, but was not, raised in the court below.' [Citation.]  It is unfair to the trial judge and to the adverse party to take advantage of an alleged error on appeal where it could easily have been corrected at trial.  [Citations.]" (*Children's Hospital & Medical Center v. Bontá* (2002) 97 Cal.App.4th 740, 776–777.)

Here, the record is extremely limited on the topic of Appellants' request for a jury trial.  Aside from a notice that Appellants had deposited jury fees, the record on the issue consists of two minute orders that briefly discuss the issue.

The first minute order—dated April 11, 2022—states William's counsel waived a jury trial, but Appellants' counsel indicated "he is not willing to waive jury at this time."  The court ordered Appellants' counsel to meet and confer with his clients on the issue.

The second minute order—dated April 18, 2022—states the following:  "Counsel for plaintiff/cross-defendant indicates that this case is an equitable claims case and there is not a

10

legal basis for a jury trial. The Court does not find legal issue[s] that require a jury trial and this case should be a nonjury trial." Appellants did not include in the record a reporter's transcript of the hearing or a statement summarizing it.

Although the record shows Appellants deposited jury fees and initially refused to waive a jury, it does not reflect that Appellants objected when the court subsequently ordered a bench trial at the April 18 hearing. Nor is there anything else in the record to indicate Appellants objected to the bench trial on the same grounds they assert on appeal. Absent such a showing, we may consider the issue forfeited and decline to consider Appellants' arguments. (See *Howitson, supra*, 81 Cal.App.5th at p. 489.)

Even if Appellants had raised the objections in the trial court, the record suggests they later withdrew those objections. During his opening statement at trial, Appellants' counsel remarked, "I believe a jury is not necessary in this case." Unless the reporter's transcript contains a typographical error—which is possible, as the transcript includes many obvious errors—counsel's statement suggests Appellants implicitly withdrew their objections and consented to the bench trial. "[I]t is well established that '. . . a party cannot without objection try his case before a court without a jury, lose it and then complain that it was not tried by jury. [Citation.]' [Citations.] . . . [W]herein defendants proceeded to try the case before a judge without objecting to the absence of a jury, 'Defendants cannot play "Heads I win. Tails you lose[.]" with the trial court.' " (*Taylor v. Union Pacific Railroad Corporation* (1976) 16 Cal.3d 893, 900.)

11

Although we could deny Appellants' arguments on either of these bases, out of an abundance of caution, we will consider their arguments on the merits.

    c.    *Appellants were not entitled to a jury trial on William's partition claim*

"Under California law, the term 'partition' signifies 'the procedure for segregating and terminating common interests in the same parcel of property.' " (*14859 Moorpark Homeowner's Ass'n v. VRT Corp.* (1998) 63 Cal.App.4th 1396, 1404–1405.) "A co-owner of real or personal property may bring an action for partition. (Code Civ. Proc., § 872.210.) 'The primary purpose of a partition suit is, as the terminology implies, to partition the property, that is, to sever the unity of possession.' " (*LEG Investments v. Boxler* (2010) 183 Cal.App.4th 484, 493.) " '[A]lthough the action of partition is of statutory origin in this state, it is nonetheless an equitable proceeding.' " (*Cummings v. Dessel* (2017) 13 Cal.App.5th 589, 596–597.) Therefore, there generally is no right to a jury trial in a partition action. (See *Meyer Koulish Co. v. Cannon* (1963) 213 Cal.App.2d 419, 430–431 ["there is no right to a jury trial in civil actions that are equitable in nature"].)

Although Appellants seem to concede that partition actions are equitable in nature, they argue they were entitled to a jury trial on William's partition claim because it was actually a partnership claim in disguise. They rely on language in William's operative complaint stating Mario and Consuelo purchased the Property under a verbal partnership agreement, which allowed either partner to call for the sale of the Property.

While it is true that William's complaint contained general allegations about a partnership agreement, those

12

allegations did not form the basis for the partition claim. Instead, they concerned the claims for accounting, dissolution of partnership, constructive trust, and breach of fiduciary duty, which William dismissed before trial. As to the partition claim, the complaint alleges it arose out of William's "undivided one-half interest as a tenant in common in the fee title to the Property."

Consistent with the complaint, William and his counsel explicitly and repeatedly stated at trial that he was not seeking to sell the property under a partnership agreement. Instead, William sought to exercise the rights he received when Mario deeded him an undivided one-half interest in the Property. Given this record, we reject Appellants' contention that William's partition claim somehow sounded in partnership law.

We also reject Appellants' contention that the judgment must be premised on a partnership theory because "California law does not allow partition by sale against an unwilling co-owner in possession." As Appellants note elsewhere in their appellate briefs, a forced sale is a strongly disfavored remedy in a partition action, but it is not prohibited. (See *Butte Creek Island Ranch v. Crim* (1982) 136 Cal.App.3d 360, 366 [partition by forced sale is " 'strongly disfavored' "].) Therefore, contrary to Appellants' contentions, the fact the court ordered partition by sale does not prove it granted the relief under a partnership theory.

d. *Appellants have not shown they were entitled to a jury trial on the quiet title claims*

It is "well established that actions to quiet title, like true declaratory relief actions, are generally equitable in nature." (*Caira v. Offner* (2005) 126 Cal.App.4th 12, 25.) However, there is an exception to this rule when the quiet title action "takes on

13

the character of an ejectment proceeding to recover possession of real property." (*Aguayo v. Amaro* (2013) 213 Cal.App.4th 1102, 1109–1110; cf. *Dills v. Delira Corp.* (1956) 145 Cal.App.2d 124, 130 ["it is well settled that an action to establish title which does not include a prayer to obtain possession of the property is equitable in nature"].) The reason for this exception is that " 'courts will not permit the declaratory action to be used as a device to circumvent the right to a jury trial in cases where such right would be guaranteed if the proceeding were coercive rather than declaratory in nature.' " (*State Farm Mutual Auto. Ins. Co. v. Superior Court* (1956) 47 Cal.2d 428, 432.)

In an ejectment proceeding, the plaintiff must prove the defendant has wrongfully deprived him of possession of the property. (*Montgomery v. Santa Ana & W. Ry. Co.* (1894) 104 Cal. 186, 197.) A judgment of ejection "awards possession to the prevailing party because he had title at the commencement of the action and because the losing party had no title, or had no such title as would authorize him to withhold possession." (*Zaccaria v. Bank of America National T. & S. Ass'n* (1958) 164 Cal.App.2d 715, 719.)

Here, neither Appellants' nor William's quiet title claims sought possession of the Property under an ejectment theory or anything comparable to an ejectment theory. Appellants were in sole possession of the Property at the time of trial, so there was no reason for them to seek to eject William or recover possession from him. Nor did William seek to eject Consuelo from the Property through his quiet title claim against her. Instead, as to that claim, William's operative complaint sought only a "judgment quieting title and declar[ing]" that William, Iva, and Miguel have an interest in the Property. In fact, William

14

could not eject Consuelo from the Property given he conceded Iva and Miguel also had undivided interests in the Property. (See *Verdier v. Verdier* (1957) 152 Cal.App.2d 348, 352 [a "cotenant [in common] has no right to oust a person who holds possession with the consent of another tenant in common"].)

Appellants argue the fact that the judgment allows William to obtain a writ of possession under Code of Civil Procedure section 712.010 (section 712.010) proves he sought possession of the Property through his quiet title claim. Section 712.010 provides that, "[a]fter entry of a judgment for possession or sale of property, a writ of possession or sale shall be issued by the clerk of the court upon application of the judgment creditor . . . ." (Code Civ. Proc., § 712.010.)

Consistent with the relief William requested in his complaint, the judgment expressly orders the sale of the Property, but it does not expressly grant William possession of it. Therefore, it seems the judgment's reference to a writ of possession under section 712.010 was intended either to be a writ of sale or to facilitate the sale of the Property. In either case, the writ is a remedy for William's partition claim, not his quiet title claim. For the reasons discussed above, Appellants had no right to a jury trial on the partition claim. Moreover, to the extent the judgment is ambiguous on this issue or awards relief beyond that requested in the complaint, Appellants could have raised an objection in the trial court. It appears they declined to do so.[2]

---

[2] Because we reject Appellants' arguments that they were entitled to a jury trial, we do not consider their arguments that the bench trial prejudiced them.

15

3. ***The court did not ignore Appellants' evidence supporting their defenses***

Appellants argue the trial court "ignored" evidence they presented in support of their affirmative defenses of laches and waiver. Despite this claim, Appellants fail to point to anything in the record showing the court excluded their evidence or otherwise refused to consider it. Therefore, as best we can tell, Appellants' argument is their evidence was so overwhelming the court must have ignored it; otherwise the court would have ruled in their favor.

Where, as here, the parties with the burden of proof challenge a decision against them, the question on appeal is whether the evidence compels a finding in their favor as a matter of law. (*Sonic Manufacturing Technologies, Inc. v. AAE Systems, Inc.* (2011) 196 Cal.App.4th 456, 466.) Specifically, the question is whether the appellant's evidence was " '(1) "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding." ' " (*Ibid*.) In considering this question, we are mindful of the most fundamental rule of appellate review: the judgment challenged on appeal is presumed to be correct, and "it is the appellant's burden to affirmatively demonstrate error." (*People v. Sanghera* (2006) 139 Cal.App.4th 1567, 1573.) To demonstrate error, the appellant "must present meaningful legal analysis supported by citations to authority and citations to facts in the record that support the claim of error." (*In re S.C.* (2006) 138 Cal.App.4th 396, 408.)

Appellants have not met their burden here. As to the waiver issue, they fail to provide a single citation to evidence in the record that supports their argument. Nor do they provide

16

meaningful analysis of how their evidence proves waiver as a matter of law. Instead, they simply assert they proved waiver through their own testimony and the testimony of one of Mario's daughters, Mildred Campana. We are not required to search the record to ascertain whether it supports Appellants' arguments, nor are we required to make Appellants' arguments for them. (*Inyo Citizens for Better Planning v. Inyo County Bd. of Supervisors* (2009) 180 Cal.App.4th 1, 14.) Accordingly, Appellants have not met their burden to show error. (See *In re S.C.*, *supra*, 138 Cal.App.4th at p. 408.)

Appellants' laches argument fails for similar reasons. Unlike their waiver argument, Appellants provide a citation to the record to support their contention that the court was obligated to grant their laches defense. Specifically, they cite a total of two pages from the reporter's transcript. On those pages, Mildred Campana testified she believed Mario deeded his interest in the Property to William so William could "help him get his money back, as he put it." Mildred also testified she never heard Mario "mention anything more than $20,000. It was clear to me it wasn't 50 percent." Appellants do not explain how this testimony proved their laches defense, nor is it self-evident. Because Appellants fail to provide any meaningful analysis of the issue, they have not met their burden to show error. (See *In re S.C.*, *supra*, 138 Cal.App.4th at p. 408.)

4.      ***The trial court did not enter judgment on a "sham" complaint***

Appellants argue the trial court erred by granting judgment on a "sham" complaint. Their argument seems to be based on the trial court's order denying in part William's motion to amend his complaint. In that order, the court ruled the

17

sham pleading doctrine precluded William from making certain amendments to the complaint.[3]  However, the court did not hold —as Appellants seem to suggest—the entire complaint was a sham.  Nor do Appellants meaningfully explain how the court's ruling is, in any way, inconsistent with the judgment. Accordingly, they have not met their burden to show error on this basis.

**5.**      ***Appellants' other arguments lack merit***

Appellants make several arguments concerning the court's order that the Property be partitioned by sale.  They make the arguments in passing, without providing meaningful analysis of the issues.  The arguments also lack merit.

First, Appellants contend the court "blocked" evidence showing the sale of the Property would not be more equitable than division of the Property.  However, they point to nothing in the record to substantiate that assertion.  From our independent review of the record, it is apparent the court allowed Appellants to present ample evidence on the issue.

Appellants next complain that the statement of decision "contains no determination by the court that partition by sale . . . was equitable."  Because Appellants failed to include the statement of decision in the appellate record, we cannot confirm their assertion.  In any event, Appellants provide no authority holding a trial court must explicitly find partition by sale is

---

[3]      "Under the sham pleading doctrine, '[i]f a party files an amended complaint and attempts to avoid the defects of the original complaint by either omitting facts which made the previous complaint defective or by adding facts inconsistent with those of previous pleadings, the court may take judicial notice of prior pleadings and may disregard any inconsistent allegations.' " (*Zakk v. Diesel* (2019) 33 Cal.App.5th 431, 447.)

18

equitable.  Even if it were required, the judgment expressly states, "Under the circumstances, the sale of the property and division of the proceeds would be more equitable than division of the property."  On this record, Appellants have not met their burden to show the trial court erred.

Finally, Appellants contend the trial court ignored legal authority that precludes the sale of property over an objection from a "related co-owner."  However, the cases on which Appellants rely simply state partition by sale is a "strongly disfavored" remedy that is available only in limited circumstances.  (See, e.g., *Richmond v. Dofflemyer* (1980) 105 Cal.App.3d 745, 757 ["Forced sales are strongly disfavored."]; *Williams v. Wells Fargo Bank & Union Trust Co.* (1943) 56 Cal.App.2d 645, 647 ["partition in kind is favored by the law, and . . . a sale will be ordered only when it is necessary to prevent great prejudice to the owners"].)  Appellants cite no authority holding partition by sale is never permitted over a co-owner's objection.  Accordingly, they have not met their burden to show error.

## DISPOSITION

We affirm the judgment.  William Campana shall recover his costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EGERTON, J.

We concur:

LAVIN, Acting P. J.

ADAMS, J.